# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONALD EUGENE GATES, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 11-cv-40-RWR |
| v. | ) ) | |
| The DISTRICT OF COLUMBIA, *et al.* | ) ) | ORAL ARGUMENT REQUESTED |
| Defendants. | ) ) ) ) ) | |

## PLAINTIFF'S REPLY TO THE DISTRICT OF COLUMBIA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    1.  Mr. Gates has already established both elements he is required to prove under
the Unjust Imprisonment Act, D.C. Code § 2-422, and is thus entitled to judgment
on liability ........................................................................................................................ 2

        A.  Judge Ugast's findings meet the requirements of the Unjust Imprisonment Act ........ 2

        B.  The District is collaterally estopped from relitigating Judge Ugast's order ................. 4

        C.  Judicial estoppel also bars relitigation of Judge Ugast's order ................................... 8

    2.  The District has set forth no admissible evidence to create a dispute of material fact ........ 10

        A.  Evidence regarding Gerald Smith's testimony that Mr. Gates confessed
to Ms. Schilling's murder is not admissible for the truth .................................................. 10

        B.  Evidence that Mr. Gates attempted to steal a woman's purse is not relevant
"misconduct" that prevents an award under the Unjust Imprisonment Act ...................... 15

CONCLUSION ........................................................................................................................... 18

# TABLE OF AUTHORITIES

**Statutes**

28 U.S.C. § 2513 ................................................................................................................. 3

D.C. Code § 23-101 ........................................................................................................... 8

D.C. Code § 2-421 ............................................................................................................. 1

D.C. Code § 2-422 ..................................................................................................... *passim*

Fla. Stat. Ann. § 961.04 ................................................................................................... 16

**Federal Rules**

Fed. R. Evid. 803 ............................................................................................................. 13

Fed. R. Evid. 804 ................................................................................................... 11, 12, 13

Fed. R. Evid. 805 ............................................................................................................. 13

Fed. R. Evid. 807 ............................................................................................................. 13

**Federal Cases**

*Akers v. Liberty Mut. Grp.*, 744 F. Supp. 2d 92 (D.D.C. 2010) ...................................... 11

*Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers*, 467 F. Supp. 2d 91

    (D.D.C. 2006) ............................................................................................................ 13

*Betts v. United States*, 10 F.3d 1278 (7th Cir.1993) ....................................................... 17

*Eastridge v. United States*, 602 F. Supp. 2d 66 (D.D.C. 2009) ................................. 16, 17

*Felter v. Salazar*, 679 F.Supp.2d 1 (D.D.C. 2010) .......................................................... 8

*Goode v. Markley*, 603 F.2d 973 (D.C. Cir. 1979) .......................................................... 4

*Greer v. Paulson*, 505 F.3d 1306 (D.C. Cir. 2007) ....................................................... 11

*Hackley v. Roudebush*, 520 F.2d 108 (D.C. Cir. 1975) ................................................. 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................... 14

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983

    (9th Cir. 2012) ............................................................................................................. 9

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ............................................................. 9

*Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462 (S.D.N.Y. 2009) ...... 13

*Taylor v. Sturgill*, 553 U.S. 880 (2008) ........................................................................... 8

*Travelers Indem. Co. v. Walburn*, 378 F. Supp. 860 (D.D.C. 1974) .............................. 5

*United States v. Acosta*, 769 F.2d 721 (11th Cir. 1985) ................................................ 12

*United States v. Bowman*, 609 F.2d 12 (D.C. Cir. 1979)............................................................ 12

*United States v. Cohen*, 733 F.2d 128 (D.C. Cir. 1984) ............................................................ 5

*United States v. Gatling*, 96 F.3d 1511 (D.C. Cir. 1996)............................................................ 11

*United States v. Mills*, 964 F.2d 1186 (D.C. Cir. 1992)............................................................ 8

*United States v. Washington*, 106 F.3d 983 (D.C. Cir. 1997)...................................................... 13

## D.C. Cases

*Brown v. District of Columbia,* No. 11595-81 (D.C. Sup. Ct. June 29, 1983) ............................ 16

*Davis v. Davis*, 663 A.2d 499 (D.C. 1995) ................................................................................ 7

*DeWitt v. District of Columbia*, 43 A.3d 291 (D.C. 2012) ..................................................... 3, 4

*District of Columbia v. Ray*, 305 A.2d 531 (D.C. 1973) ......................................................... 6, 7

*EDCare Mgmt., Inc. v. DeLisi*, 50 A.3d 448 (D.C. 2012) ......................................................... 8

*In re Crawley*, 978 A.2d 608 (D.C. 2009) ......................................................................... 5, 7, 8

*Randolph v. District of Columbia*, 156 A.2d 686 (D.C. 1959) .................................................... 7

*Ross v. Lawson*, 395 A.2d 54 (D.C. 1978)................................................................................ 5

*Wilson v. United States*, 424 A.2d 130 (D.C 1980) ................................................................... 8

## State Cases

*Brown v. State of New York,* Cl. No. 113684, Mot. No. M-75106 (NY Ct. Cl. Oct. 20, 2008) ... 14

*City of Hamilton v. Mavros*, 943 P.2d 963 (Mont. 1997) ........................................................ 12

*In re J.M.*, 661 S.E.2d 328 (N.C. App. Ct. 2008) ...................................................................... 12

*Lanza v. New York*, 130 A.D.2d 872 (N.Y. Ct. App. 1987) ....................................................... 18

*O'Donnell v. New York*, 26 A.D.3d 59 (N.Y. Ct. App. 2005) .................................................... 16

*State v. Summers*, 528 S.E.2d 17 (N.C. 2000) .......................................................................... 5

*Warney v. State*, 947 N.E.2d 639 (N.Y. Ct. App. 2011)............................................................ 17

## INTRODUCTION

After denying for over two-and-a-half years that Donald Gates is innocent of the rape and murder of Catherine Schilling, the District finally admits that it has no evidence establishing his guilt. The District also concedes that the only two issues of relevance to Mr. Gates's Unjust Imprisonment Act claim—whether, by clear and convincing evidence Mr. Gates did not commit the acts charged, and whether he caused or brought about his prosecution by his own misconduct—were already determined by Judge Ugast in his favor during the post-conviction criminal proceedings.[1] The District's only remaining argument is that the "misconduct" prong should be relitigated.

First, it contends that this court should determine, contrary to Judge Ugast, that Mr. Gates caused his own prosecution for rape and murder by admitting that he attempted to rob a purse from another woman about a month before the Schilling homicide. Second, the District argues that there is a genuine issue of material fact whether Mr. Gates admitted to a crime he did not commit to Smith.

---

[1]   Any person bringing suit under § 2-421 must allege and prove:

   (1) That his conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction; and

   (2) That, based upon clear and convincing evidence, he did not commit any of the acts charged or his acts or omissions in connection with such charge constituted no offense against the United States or the District of Columbia the maximum penalty for which would equal or exceed the imprisonment served and he did not, by his misconduct, cause or bring about his own prosecution.

D.C. Code 2-422.  The District admits that Mr. Gates satisfied Section 2-421(1). *See* DE 85, District of Columbia Response to Plaintiff's Statement of Material Facts ¶ 14.  And it does not challenge that Mr. Gates satisfied the first prong of Section 2-421(2) as well. *Id.* ¶ 17.

In enacting the D.C. Unjust Imprisonment Act, the D.C. Council intended that questions of innocence and misconduct would be decided once, either during appellate or post-conviction proceedings *or* through a separate civil claim. In addition, the District is both collaterally and judicially estopped from relitigating issues decided by Judge Ugast. As the District acknowledges, the District and United States act as the same sovereign with respect to criminal prosecutions under the D.C. Code and are thus equally bound to a criminal prosecution's outcome. Finally, the dubious notion that the commission of a prior crime causes the prosecution of a later unrelated crime is wrong as a matter of law. And, because the District has presented no admissible evidence that Mr. Gates confessed to Smith, the only evidence in the record is Mr. Gates' unequivocal denial that he did so. In the absence of any genuine issue of material fact, partial summary judgment on Mr. Gates's Unjust Imprisonment Act claim should be granted.

## ARGUMENT

**1. Mr. Gates has already established both elements he is required to prove under the Unjust Imprisonment Act, D.C. Code § 2-422, and is thus entitled to judgment on liability**

### A.  Judge Ugast's findings meet the requirements of the Unjust Imprisonment Act

The District does not dispute that D.C. Superior Court Judge Ugast made exactly the findings required by the Unjust Imprisonment Act, D.C. Code § 2-422, during Mr. Gates's Innocence Protection Act proceedings: that, by clear and convincing evidence, Mr. Gates did not commit the acts charged and did not, by his own misconduct, cause or bring about his prosecution. *See* DE 85, DC's Response to Plaintiff's Statement of Material Facts Not in Dispute (DC Resp. to PSMF), ¶¶ 14, 16. But the District wholly ignores Mr. Gates's argument that those findings are sufficient to trigger compensation under the Act because they meet the Act's plain-

language requirements. *See* DE 81-1, Plaintiff's Memorandum in Support of Partial Summary Judgment (Pl's Mem.), at 5–6.

Judge Ugast's findings during the post-conviction proceedings are precisely those required to trigger the civil damages remedy provided in the Act. There is no indication in the statute or in the legislative history of the Unjust Imprisonment Act that a judge's findings may be reopened in a subsequent civil proceeding. To the contrary, the City Council contemplated a single litigation involving "*a* judicial determination of proof of legal and factual innocence." DE 81-2, Exhibit A (Report, Council of the District of Columbia to Members of the Committee on the Judiciary, July 9, 1980), at 2 n.1 (emphasis added); *id.* at 9 (explaining that the Act requires "*a* judicial determination of whether the claimant is entitled to relief") (emphasis added). Such a determination could take place in a prosecution brought by a United States Attorney because the District did "not limit recovery to persons prosecuted by District officials or tried in the Superior Court of the District of Columbia, but rather permit[ed] suit by any person imprisoned for a D.C. Code offense." *Id.* at 5. Moreover, the District patterned its Act on the analogous federal statute, *see id.* at 7 (explaining that the Unjust Imprisonment Act's requirements "basically track[] the language of the federal unjust imprisonment statute"), under which determinations of innocence and lack of misconduct are made by a certificate of court or pardon during the criminal case, before a civil claim is brought for compensation in the Court of Claims. 28 U.S.C. § 2513(b).

The D.C. Court of Appeals recently affirmed this plain reading of the Act. In *DeWitt*, the court rejected the argument that the Act "contemplate[s] that the issue of innocence will be litigated in a[t] least two proceedings." *DeWitt v. District of Columbia*, 43 A.3d 291, 300 n.13 (D.C. 2012), *cert denied*, 133 S. Ct. 449 (2012). *DeWitt* explained that it would only be appropriate to litigate those questions under the Act "where the issue of actual innocence has not

already been adjudicated" during the criminal proceedings. *Id.* They were here. The District

ignores this aspect of *DeWitt*,[2] and thus fails to show why Mr. Gates has not already satisfied the

requirements of Section 2-422.

**B.  The District is collaterally estopped from relitigating Judge Ugast's order**

The District admits that the United States would be collaterally estopped from relitigating

the issues determined in Mr. Gates's Innocence Protection Act proceedings: it concedes that the

issues were actually litigated, determined by a valid, final judgment on the merits after a full and

fair opportunity for litigation, and were essential to the judgment. *See* DE 85, District of

Columbia Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (DC

Mem.), at 7 & 8 n.1. But the District argues that *it* cannot be estopped because it was a non-party

to the criminal proceeding. The flaw in the District's argument is that it merely assumes that

conclusion, and thus devotes all of its attention to Mr. Gates' alternative argument of privity.

With respect to the criminal proceeding, the District and the United States are the same

party.  Pl's Mem. at 10-12. The District concedes that, "for the purpose of criminal violations

only, the United States and the District are a single sovereign." DC Mem. at 10 (referring to

*Goode v. Markley*, 603 F.2d 973, 976 (D.C. Cir. 1979)). This ends the matter. Because, with

respect to a criminal proceeding, the District and United States act as one sovereign, the District

and the United States are equally bound to judicial findings made in the criminal case in

---

[2]  The District attempts to distinguish *DeWitt* as an inapplicable example of non-mutual collateral estoppel, DE 85, District of Columbia Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (DC Mem.), at 7-8, but misses the point why *DeWitt* applies here—the interplay between the Innocence Protection Act and Unjust Imprisonment Act. Moreover, with respect to collateral estoppel, *DeWitt* never characterized its decision as resting on "non-mutual" estoppel, for good reason: estoppel arising from Innocence Protection Act proceedings is mutual because the District and United States act as a single sovereign and are thus the same party, or alternatively, are in privity with one another. *See infra* at I.B.

subsequent civil proceedings so long as the traditional four-part test for application of issue

preclusion is satisfied (as is conceded here).[3]

This outcome is the result of congressional choice. "[T]he Constitution vests Congress

with 'extraordinary and plenary power . . . over the District.'" *In re Crawley*, 978 A.2d 608, 620

(D.C. 2009) (quoting *United States v. Cohen*, 733 F.2d 128, 140 (D.C. Cir. 1984) (en banc)).

With respect to criminal prosecutions, Congress gave the United States Attorney authority to

prosecute violations of most D.C. Code offenses. *See Crawley*, 978 A.2d at 610 (summarizing

the 1970 Court Reform Act). When Congress established the District's current organizational

structure in the 1973 Home Rule Act, it preserved the United States Attorney's "historic

responsibility to prosecute virtually all criminal offenses" in the District. *Id.* at 618–19. Efforts to

change this system and establish a local prosecutor for the District akin to state district attorneys,

which can only be done by Congress, have repeatedly failed. *See id.* at 614.

By congressional design, then, the United States Attorney acts as the local prosecutor for

the District of Columbia and serves as an arm of the District. Just like a state would be bound to

the determination of issues in cases brought by its district attorney or attorney general, the

District is collaterally estopped from relitigating issues decided during criminal prosecutions for

violations of the D.C. Code. *See, e.g.*, *State v. Summers*, 528 S.E.2d 17, 22 (N.C. 2000)

(concluding that state was collaterally estopped from relitigating issues in a criminal DWI case

---

[3]  The District seems to suggest that findings made in a criminal proceeding may not have
preclusive effect in a subsequent civil proceeding. DC Mem. at 10. Given the differences in the
burden of persuasion, criminal-to-civil issue preclusion is commonplace. *E.g.*, *Ross v. Lawson*,
395 A.2d 54 (D.C. 1978) (finding collateral estoppel applied to preclude fact assault occurred in
a civil case after defendant was convicted of assault in a criminal case); *Travelers Indem. Co. v.
Walburn*, 378 F. Supp. 860, 865 (D.D.C. 1974) ("If the criminal jury found [facts] beyond a
reasonable doubt . . . , it would be an exercise in futility for this Court to retry the same issues.
This is especially true where the civil burden is only by a preponderance."). Here, of course, the
standard Judge Ugast used to issue the Certificate of Innocence—clear and convincing
evidence—was exactly the same as that required by the Unjust Imprisonment Act.

when the same issues had been litigated in a civil license revocation hearing with the Attorney

General representing the DMV, because "there can be no question that the district attorney and

the Attorney General both represent the interests of the people of North Carolina, regardless of

whether it be the district attorney in a criminal trial court or the Attorney General in a civil or

criminal appeal"). Thus, in this context, the United States and the District, as unified sovereigns

in criminal proceedings under the D.C. Code, are the same party.

It is no matter that Congress chose to treat the District as a separate entity from the

United States in other contexts. The District points to the fact that the United States plays no role

in civil suits against the District, *see* DC Mem. at 9, or libel actions regarding seized property, *id.*

at 10 (citing *District of Columbia v. Ray*, 305 A.2d 531, 534 (D.C. 1973)). But the relevant

decision *here*, Judge Ugast's decision during post-conviction litigation, took place in the context

of a criminal prosecution where Congress has established that the District and United States act

as a single sovereign.

If anything, the District's examples merely distinguish between situations in which

Congress has unified the sovereignty of the United States and the District and those in which it

has designated that they have separate status. In *Ray*, the D.C. Court of Appeals observed that the

unquestioned default position in the relationship between the United States and the District was

"commonality of sovereignty." 305 A.2d at 534. The question it addressed was whether the

District, "a creature of Congress and the Constitution[,] can be given a separate status before the

courts to litigate as a party different from the United States." *Id*. The Court held that Congress

can exercise its "exclusive" prerogative to do so and, there did, by enacting a statute that gave

the District such status with respect to libel suits regarding seized property. The District was thus

permitted to relitigate the lawfulness of a federal search warrant because to treat the District and

the United States as the same for estoppel purposes in that context "would be to rewrite the legislative distinction Congress made." *Id.*[4] Here, in contrast, in the absence of such a statute, treating the District and United States differently for estoppel purposes would undermine Congress's choice that they be unified with respect to criminal prosecutions.

Like *Ray*, *Randolph v. District of Columbia*, 156 A.2d 686 (D.C. 1959), was also based on Congress's decision to give the District and United States separate status in a particular context. The United States and the District were each given prosecutorial authority over a driver who killed a pedestrian, the District's authority being limited to the prosecution of a traffic violation. *See Ray*, 305 A.2d at 534 (explaining that in *Randolph*, the Court held that "Congress has endowed the District of Columbia with [separate] status in a criminal case where both United States and District of Columbia charges arose from the same incident").[5]

Alternatively, the United States and the District are in privity. *See Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995) (issue preclusion applies after opportunity for litigation by "parties or their privies"); Pl's Mem. at 11 & n.5. On privity, the District's argument rests largely on straw men: that standard privity relationships—such as a successor interest, ability to control, contractual relationship, beneficial interest, or assignor/assignee relationship—are not present

---

[4] Thus, the City Council's decision to afford wrongfully convicted District residents a District remedy, in addition to that afforded them in 25 U.S.C. § 2513, cannot possibly be the source of separate status the District asserts that it has. The District's status as separate or unified with the United States can only be determined by Congress. *See In re Crawley*, 978 A.2d at 620 (holding that the District could not make exceptions to the United States Attorney's authority to prosecute crimes under the D.C. Code because "what Congress has done and what it remains free to do in this field are not probative of the Council's legislative authority").

[5] Moreover, *Randolph*'s holding that an acquittal in a negligent homicide prosecution brought by the United States could not estop the District from pursuing a traffic violation for inattentive driving was compelled by the fact that the two cases did not involve the same issues, thus making any of its statements about privity dicta. *See* 156 A.2d at 687–88 ("The essentials of the two offenses are strikingly different. . . .").

here. *See* DC Mem. at 8–12.[6]  But none of those relationships are *required* to find privity; they

were simply the relevant privity relationships at issue in those cases. *E.g.*, *EDCare Mgmt., Inc. v.*

*DeLisi*, 50 A.3d 448, 451 (D.C. 2012) ("relevant" relationship to privity analysis was

assignor/assignee). The relevant relationship here, in contrast, is the "pre-existing substantive

legal relationship," *Taylor v. Sturgill*, 553 U.S. 880, 894 (2008), established by Congress, which

gave the United States Attorney power to "represent[] the government of the District of

Columbia and its police" in criminal prosecutions. *Wilson v. United States*, 424 A.2d 130, 133

(D.C 1980).

### C.  Judicial estoppel also bars relitigation of Judge Ugast's order

The arguments the District makes with respect to judicial estoppel are essentially the

same as with collateral estoppel—the District argues that it "was not a party to Plaintiff's post-

conviction proceeding." DC Mem. at 14. As discussed above, the District need not be a named

party to the post-conviction proceedings to be bound to its outcome due to the unique choice of

Congress that, in criminal prosecutions, the District and United States operate as a unified

sovereign. *See United States v. Mills*, 964 F.2d 1186, 1192 (D.C. Cir. 1992) ("The special role of

---

[6]  One of those relationships that the District views as a straw man— "a law that requires the
United States to represent the District's interest," DC Mem. at 10—is not so easy for it to knock
down. D.C. Code § 23-101(c), which vests the United States with authority to prosecute all
violations of the D.C. Code except narrow categories specifically identified elsewhere in the
statute, *see In re Crawley*, 978 A.2d at 609–10, does precisely that. It effectively establishes that
the United States, in its name, represents the interests of the District in the enforcement and
prosecution of crimes identified in District law. This leads the District to misunderstand this
Court's application of issue preclusion when the party was a fiduciary representative for the
"beneficial" interest of a non-party. *Felter v. Salazar*, 679 F. Supp. 2d 1, 9 (D.D.C. 2010). If the
United States is viewed as a fiduciary of the District, that relationship is obviously "beneficial,"
as the full weight and resources of the United States are used to prosecute District crimes.
"Beneficial" describes the relationship between the party and privy in the original case, not
whether the use of issue preclusion will benefit or harm the privy in a subsequent case. DC Mem.
at 11. Here, that relationship is beneficial because the District benefits from federal funds and
resources being used to prosecute local crimes.

the U.S. attorney is, of course, an implementation of the concept of unified sovereignty."). Given common sovereignty, it is not necessary (or logical) to require the District to have received some benefit separate and independent from the United States' position in the post-conviction proceeding.

The assertion that the District has not taken the inconsistent position that is the foundation of judicial estoppel founders on its assumption that it and the United States are different parties. Until the District filed its opposition brief, the District and the United States, its common party, took two inconsistent positions: the United States agreed that Mr. Gates was innocent and did not oppose a finding that he did not cause his own prosecution; the District contended the opposite. Now, only the second proposition is in controversy. For the District to relitigate that issue risks the "integrity of judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). Opposite findings by two different courts on whether Mr. Gates caused his own prosecution is precisely the type of outcome that judicial estoppel is intended to prevent.

Again, only if the court concludes that the United States and the District are separate parties does the notion of privity arise. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012), is significant not because it dealt specifically with the well-established privity between beneficiaries and executors, but because it recognized that judicial estoppel applies in cases involving privity relationships. Just as, alternatively, the United States and the District are in privity with regard to criminal prosecution and the aftermaths of them, so they are in privity with respect to judicial estoppel.[7]

---

[7] The District argues that a consequence of finding it is bound by Judge Ugast's order is that Mr. Gates would also be bound, in his suit against the District, by the releases of liability in his settlement with the United States. DC Mem. at 15 n.7. This is not so. Mr. Gates brought separate claims, under separate statutes, against the United States and District. Nothing in his settlement and release with the United States would bind him in his litigation of a separate claim against the

**2. The District has set forth no admissible evidence to create a dispute of material fact**

The District no longer claims there is any dispute of fact regarding Mr. Gates's

innocence. It admits that it has no evidence of Mr. Gates's guilt. DC Resp. to PSMF ¶ 17.

But the District alleges that there is a dispute of fact as to whether Mr. Gates caused or

brought about his prosecution through his own misconduct—despite Judge Ugast's findings by

clear and convincing evidence that he did not. DC Mem. at 15–17. In support, the District points

only to the facts that Gerald Smith testified that Mr. Gates confessed to the murder (which Mr.

Gates has consistently denied), and that "other crimes" evidence (of just one other crime, an

attempted purse snatching) was admitted against Mr. Gates at his trial. DC Mem. at 15–17.

Neither of these facts, both of which were known to Judge Ugast, gives rise to a genuine

issue for trial. Even if this Court does not find that Judge Ugast's order satisfies both

requirements of D.C. Code § 2-422 as a matter of law, or estop the District, like Judge Ugast, it

should conclude that Mr. Gates did not cause or bring about his own prosecution.[8]

**A. Evidence regarding Gerald Smith's testimony that Mr. Gates confessed to Ms. Schilling's murder is not admissible for the truth**

Mr. Gates does not dispute that Mr. Smith testified at his criminal trial. *See* Plaintiff's

Resp. to Defendant's Counterstatement of Material Facts (Pl's Resp. to DC Counterstatement of

Facts), ¶¶ 10, 11, 15. Nor is there any dispute about the basic fact to which Smith testified—that

Mr. Gates confessed to him—even though Smith does not, today, say that this is true. The

---

District. To hold otherwise would be contrary to the language of the settlement and undermine
the legislature's intent that claimants be able to pursue claims stemming from a wrongful
conviction under both the D.C. Unjust Imprisonment Act and federal statute. *See* DE 81-2, Ex. A
(Committee Report), at 5.

[8] As Mr. Gates explained in his opening brief, the Certificate of Innocence issued by Judge Ugast
is also relevant and admissible evidence that shows there is no actual dispute of material fact. *See*
Pl's Mem. at 16.

District contends that this prior testimony creates a genuine issue of material fact whether Mr.

Gates's "misconduct" caused or brought about his own prosecution, D.C. Code § 2-422(2),

because it is in conflict with Mr. Gates's consistent denial that he ever met Smith, much less

confessed to him.[9] But evidence considered at summary judgment must be admissible or capable

"of being converted into admissible evidence." *Akers v. Liberty Mut. Grp.*, 744 F. Supp. 2d 92,

96 (D.D.C. 2010) (quoting *Greer v. Paulson*, 505 F.3d 1306, 1369 (D.C. Cir. 2007). Mr. Smith's

prior testimony cannot meet that standard. It is inadmissible hearsay: an out-of-court statement

that the District is attempting to offer for the truth of the fact asserted, that Mr. Gates actually

confessed to Smith. *See United States v. Gatling*, 96 F.3d 1511, 1524 (D.C. Cir. 1996) ("[O]ut-

of-court statements offered for their truth [are] inadmissible hearsay even if the declarant is also

a witness at trial."). Inadmissible hearsay "counts for nothing' on summary judgment." *Akers*,

744 F. Supp. 2d at 96 (quoting *Greer*, 505 F.3d at 1315). That leaves as the only admissible

evidence in the record on this subject Mr. Gates's consistent denial that he ever made such a

confession. Pl's Resp. to DC Counterstatement of Facts, ¶¶ 3, 10–12.

     The District does not even attempt to show how Mr. Smith's testimony is "admissible as

a hearsay exception or as non-hearsay." *Akers*, 744 F. Supp. 2d at 97 n.3 ("declin[ing] to address

arguments that the defendant did not bother to make"). If it had, it would not have succeeded.

Prior testimony is admissible for its truth only where the declarant is "unavailable as a witness,"

Fed. R. Evid. 804(b), which may include circumstances where a witness "testifies to not

---

[9] The District suggests that Mr. Gates somehow conceded Gerald Smith's testimony at his
criminal trial. DC Mem. at 6 & 15. Despite the District's characterization, Mr. Smith's testimony
was certainly in dispute. Mr. Gates exercised his constitutional right not to testify, and cross-
examined Smith. *See* DE 83-1 (Def's Statement of Undisputed Facts), ¶ 34. And even though
Mr. Gates was under no obligation to put forth affirmative evidence to challenge the
Government's case, he offered significant forensic evidence at trial establishing his innocence.
*See* Plaintiff's Resp. to Defendant's Counterstatement of Material Facts, ¶ 12.

remembering the subject matter," *id.* 804(a)(3), the only one relevant here. But the District has

failed to meet its burden of establishing that Gerald Smith is "unavailable as a witness" due to

memory loss. *See United States v. Acosta*, 769 F.2d 721, 723 (11th Cir. 1985) ("The burden of

proving the unavailability of a witness under Rule 804(a) rests with the proponent of the hearsay

evidence.").[10]

Furthermore, no trial transcript reflecting Mr. Smith's verbatim testimony, including his

full direct and cross examination, exists. Partial summaries or witness recollections of Smith's

testimony are not sufficient evidence to be admitted as a hearsay exception under Rule 804(b)(1)

in order to show that Mr. Smith's testimony is true—that Mr. Gates actually confessed to him—

as the District must in order to create a genuine issue of fact as to whether Mr. Gates's

"misconduct" caused or brought about his prosecution. "The prior testimony of a witness is only

an exception to hearsay under Rule 804(b)(1)," and thus admissible for its underlying truth,

"when that testimony is offered through the use of a transcript or some other recording device

which accurately presents a verbatim record of the testimony from the earlier proceeding." *City

of Hamilton v. Mavros*, 943 P.2d 963, 966 (Mont. 1997) (addressing state rule of evidence

analogous to Federal Rule 804(b)(1), and finding error where "testimony was admitted, not

through a transcript which accurately repeated the direct and cross-examination before the

District Court jury, but through another person's memory"); *see also United States v. Bowman*,

609 F.2d 12, 19 (D.C. Cir. 1979) (holding that "*the transcript* of the prior testimony is

---

[10] Nor could it. Smith failed to respond to a subpoena requesting documentary evidence to
corroborate his claimed "memory disorder." *See Acosta*, 769 F.2d at 723 (explaining that lack of
"medical evidence" corroborating claim of unavailability due to medical issue undermined such
claim). In addition, Smith acknowledged that he had *some* memory of the subject matter: he
remembered that police provided him food and money in exchange for information and that he
"would tell them exactly what they wanted to know." Pl's Resp. to DC Counterstatement of
Facts, ¶ 16.

admissible under the Rule because the witness was 'unavailable'") (emphasis added). Without a

full transcript, it is impossible for a trier of fact to adequately evaluate Smith's credibility. *See In*

*re J.M.*, 190 N.C. App. 379, 386-87, 661 S.E.2d 328 (N.C. App. Ct. 2008) (concluding that

although prior testimony could have been admissible under Rule 804(b)(1), where "no transcripts

of the prior testimony even existed," it was error to rely "upon notes of the testimony").[11]

     The only other basis the District could resort to, to attempt to admit Mr. Smith's

testimony for its truth, is "Rule 807, the so-called residual exception to the hearsay bar." *Barry v.*

*Trustees of Int'l Ass'n Full-Time Salaried Officers*, 467 F. Supp. 2d 91, 103 (D.D.C. 2006). But

Rule 807 only underscores why Mr. Smith's allegation that Mr. Gates confessed cannot be

admitted for its truth. Rule 807 is "extremely narrow and require[s] testimony to be very

important and very reliable." *Id.* (quoting *United States v. Washington*, 106 F.3d 983, 1001 (D.C.

Cir. 1997)). "[T]he proponent of the statement bears a heavy burden to come forward with

indicia of both trustworthiness and probative force." *Barry*, 467 F. Supp. 2d at 103 (quoting

*Washington,* 106 F.3d at 1001–02). Smith's testimony cannot possibly meet this standard—it

---

[11] The recollections of people who observed the criminal trial as to what they saw are, however, admissible to establish what happened at trial; direct testimony about what these witnesses observed is not hearsay at all. And their descriptions of what they heard other witnesses say are not hearsay so long as they are only offered to prove *what* was said rather than what was said was true. *See, e.g.*, *Pilgrim v. McGraw-Hill Companies, Inc*., 599 F. Supp. 2d 462, 477 (S.D.N.Y. 2009) (testimony is "not hearsay" when "it is offered for the fact that the comments were made—not to prove the truth of their content"). AUSA Harrington, for example, testified as to his recollection of what witnesses testified to at the trial and further testified that the statements of fact in the prosecution and defense appellate briefs were accurate summaries of the trial, Pl's Resp. to DC Counterstatement of Facts ¶ 12, which neither party disputes. But if the evidence is offered to prove the *truth* of what the criminal trial witnesses said at trial—such as Smith's assertion that Mr. Gates has confessed to him—that *is* hearsay. Each layer of hearsay must be independently admissible under a hearsay exception. Fed. R. Evid. 805. *See generally Hackley v. Roudebush*, 520 F.2d 108, 157 n.195 (D.C. Cir. 1975) ("With respect to the underlying testimony, however, there will often be a double or triple hearsay problem, *see* Rule 805, even though the transcript itself may be admissible under Rule 803(6) or (8)(B).").

was incredible even at the time of trial and today, after Mr. Gates's exoneration, has been entirely discredited. Smith only came forward to assist the police in the Schilling murder investigation after he was indicted for stealing money from the MPD, which it had given him to use in a drug buy-bust operation. Pl's Resp. to DC Counterstatement of Facts ¶ 13. He had been acting as a paid police informant, and had become known within the MPD as being completely untrustworthy, a fact undisclosed to Mr. Gates. *Id.* ¶ 14. And Smith, who had four prior convictions, including one for false pretenses, DE 85 (DC's Counterstatement of Material Facts) ¶ 13, testified about the purported confession in exchange for dismissal of four other pending cases. *Id.* ¶ 15. In light of the DNA results exonerating Mr. Gates, any remaining shred of believability in Smith's testimony has been entirely discredited. Significantly, not even the District attempts to rely on Smith's testimony as substantive evidence of guilt.

Even if Smith's testimony were somehow admissible, it is so incredible that it cannot create a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial."). For example, in *Brown v. State of New York*, Cl. No. 113684, Mot. No. M-75106 (NY Ct. Cl. Oct. 20, 2008), attached as Exhibit B, the court granted summary judgment on liability for the plaintiff on a claim under New York's wrongful conviction statute, concluding that the testimony of a jailhouse snitch made during the underlying criminal trial, that the plaintiff had confessed to murder, was so incredible that, even considering the evidence in the light most favorable to the state, it "fails to raise any legitimate question of fact as to the issue of whether claimant, by his own actions, contributed to his conviction." *Id.* at 4.

**B.  Evidence that Mr. Gates attempted to steal a woman's purse is not relevant "misconduct" that prevents an award under the Unjust Imprisonment Act.**

Mr. Gates admits that he attempted to rob the purse of Nancy Benoff in Rock Creek Park, and that this attempt led to an assault charge due to the fact that Mr. Gates stumbled, while drunk, into Ms. Benoff and accidentally knocked her to the ground. Pl's Resp. to DC Counterstatement of Facts, ¶ 8. This act is not "misconduct" that "cause[d] or b[rought] about [Mr. Gates's] own prosecution," D.C. Code § 2-422(2), for the death of Ms. Schilling. It is a separate incident, wholly unrelated to the crimes with which Mr. Gates was ultimately charged and wrongfully convicted of, rape and murder. [12]

The contention that a prior, unrelated incident can prevent an innocent person from obtaining relief under the Unjust Imprisonment Act should be rejected as a matter of law. The Act's intent was "to provide a remedy for persons who have been incarcerated for an unjust conviction." DE 81-2, Ex. A (Committee Report), at 1. The types of "misconduct" the District anticipated might bar recovery were "falsely giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony or concealing the guilty of another." *Id.* at 8. All of these examples share a common feature, not shared by Mr. Gates's prior purse-snatching incident—they are acts that cause or bring about *prosecution of the crime at issue*. The legislature did not intend prior acts, unconnected to the charge on which an individual is wrongfully convicted, to count as "misconduct" that prevents relief. To the contrary, it specifically explained that even "proof of

---

[12] The District wrongly equates the federal standard with D.C. Code § 2-422(2)'s "misconduct" element. A plaintiff is not ineligible for relief under the District's Act, unlike the federal statute, if his "negligence" causes or brings about the prosecution. *See* DC Mem. at 17. The District expressly chose not to follow the federal statute in this respect. *See* DE 81-2, Ex. A (Committee Report), at 8 n.16. Yet even under the more rigorous federal standard, arguments similar to those made here by the District have been rejected.

some *contemporaneous*, but unrelated, crime should not bar recovery." DE 81-2, Ex. A (Committee Report), at 8 n.15 (emphasis added). And it did not disqualify all claimants with a prior record, as some states have chosen to do. *E.g.*, Fla. Stat. Ann. § 961.04 (prior felony renders claimant ineligible for compensation).

Every individual who is wrongfully convicted of a crime he did not commit comes onto the police's radar for some reason. Bradford Brown, for example, who was wrongfully convicted of murder and whose case was a significant impetus behind the District's passage of the Unjust Imprisonment Act, *see* DE 81-2, Ex. A (Committee Report), at 2, became a suspect in the shooting when he "was picked up on a gun charge." Margaret Gentry, *Innocent Man Spends Five Years in Prison*, Daily News, Jan 6. 1980, at 10-A, *available at* http://news.google.com/ newspapers?nid=1696&dat=19800104&id=470dAAAAIBAJ&sjid=AkcEAAAAIBAJ&pg=664 9,578064.  This did not prevent the D.C. Superior Court from entering summary judgment on the issue of the District's liability for his damages. *See Brown v. District of Columbia*, No. 11595-81 (D.C. Sup. Ct. June 29, 1983), Order Granting Summary Judgment, attached as Exhibit C. "The Legislature could not have intended to enact a remedial statute that no one would be able to use." *O'Donnell v. New York*, 26 A.D.3d 59, 65 (N.Y. Ct. App. 2005) (rejecting theory that innocent claimant's offering false alibi to police when first interviewed caused his conviction).

The District points to no cases supporting its view that a prior, unrelated crime can bar relief. In fact, courts have repeatedly rejected similar arguments. In *Eastridge v. United States*, 602 F. Supp. 2d 66, 71 (D.D.C. 2009), *aff'd sub nom. Diamen v. United States*, 604 F.3d 653 (D.C. Cir. 2010), for example, the government argued that several plaintiffs, who were wrongfully convicted of a stabbing homicide and sought compensation under the federal statute, were precluded from relief due to acts they committed at the time of the murder that the

government argued "contributed to bring about their arrest or conviction." *Id.* This "misconduct" included concealment of a knife, being drunk in public near the murder scene, and assisting the actual murderer to escape. *Id.* The Court found the government's arguments "totally unpersuasive," and an "over-read[ing]" of the statute," because the conduct was all "unrelated to the actual crime charged—first degree murder." *Id.* It explained, quoting *Betts v. United States*, 10 F.3d 1278, 1285 (7th Cir. 1993), that "[t]he statute expressly requires a causal connection between the petitioner's conduct and his prosecution; it does not preclude relief simply because the petitioner engaged in misconduct or neglect, period." *Eastridge*, 602 F. Supp. 2d at 72.[13]  The alleged misconduct here is even further removed and unrelated to the charged crime than that in *Eastridge*. And in *Warney v. State*, even though a wrongful conviction claimant's own conduct led to his initial contact with police, the court rejected the state's argument that this barred recovery under New York's statute: "A claimant's statutory obligation to prove that 'he did not . . . cause or bring about his own conviction' could conceivably be read as barring recovery when *any* action by the claimant caused or brought about the underlying conviction, no matter how indirectly. This reading, however, would bar recovery by every innocent claimant who inadvertently and unforeseeably played some small role in the chain of events leading to his or her conviction." 947 N.E.2d 639, 645 (N.Y. Ct. App. 2011).

Furthermore, the District does not offer any evidence to suggest that the purse snatching actually caused or brought about Mr. Gates's prosecution for Ms. Schilling's rape and murder. It points only to the fact that the crime was introduced at trial, and the United States Attorney's and

---

[13] The District confusingly cites *Betts* as an example of a case in which misconduct precluded relief by "mislead[ing] the authorities into thinking he had committed an offense." DC Mem. at 18 n.12. But *Betts* actually held that the alleged acts in that case, even if they "constituted misconduct or neglect, . . . did not render [Betts] responsible for the mistaken decision to prosecute him." 10 F.3d at 1286.

Mr. Gates's deposition testimony therefore acknowledging that it played some "role" in his prosecution. But playing a "role" in a trial is not the same as "causing" or "bringing about" a prosecution so as to bar relief. *See, e.g.*, *Lanza v. New York*, 130 A.D.2d 872, 874 (N.Y. Ct. App. 1987) (rejecting state's argument that claimant's failure to testify, even though it played some role in his trial, constituted conduct barring his New York wrongful conviction claim). As Judge Ugast, who was fully aware of the purse-snatching incident found, Mr. Gates did not cause or bring about his own prosecution by any misconduct. The government cannot use this incident to create a dispute of material fact with respect to the "misconduct" element of D.C. Code § 2-422(2).

## CONCLUSION

Mr. Gates has already proven once, by clear and convincing evidence, that he is actually innocent and did not cause or bring about his own prosecution. The District offers no reason for this Court to relitigate those issues and come to a different conclusion. Plaintiff's motion for summary judgment should therefore be granted. Plaintiff respectfully requests oral argument.

Dated:  July 15, 2013                            Respectfully Submitted,


  /s/ Jeffrey S. Gutman
Jeffrey S. Gutman
D.C. Bar No. 416954
2000 G Street, NW
Washington DC, 20052
(202) 994-7463 (phone)
(202) 994-4693 (fax)

 /s/ Peter J. Neufeld
Peter J. Neufeld
Nick Brustin
Vanessa Buch
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

*Counsel for Plaintiff Donald Gates*