UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
DONALD EUGENE GATES,          )
                              )
          Plaintiff,          )
                              )
          v.                  )     Civil Action No. 11-40 (RWR)
                              )
DISTRICT OF COLUMBIA, et al., )
                              )
          Defendants.         )
_____)


<u>MEMORANDUM OPINION AND ORDER</u>

     Plaintiff Donald Gates brings a claim against the District

of Columbia ("the District") under the Unjust Imprisonment Act,

D.C. Code § 2-421 <u>et seq.</u> (Count One) and individual liability

claims under 42 U.S.C. § 1983 against retired Metropolitan

Police Department ("MPD") detectives Ronald Taylor and

Norman Brooks, retired MPD lieutenant John Harlow, and unnamed

MPD officers for violating Gates' right to a fair trial (Count

Two), failing to intercede in a constitutional violation (Count

Three), and conspiring to violate Gates' constitutional rights

(Count Four, in which police informant Gerald Smith is named as

a defendant) stemming from Gates' wrongful conviction in D.C.

Superior Court for Catherine Schilling's rape and murder.[1]  Gates

_____

     [1] Gates alleges a claim under section 1983 and <u>Monell v.
Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), against the District
in Count Five, but concedes that summary judgment for the
District is warranted on that claim.  Gates' Mem. of P. & A. in

moves for partial summary judgment on Count One and the
defendants move for summary judgment on the remaining Counts.
Because there remain genuine issues of material fact on Counts
One through Four, summary judgment will be denied on those
claims.

The defendants also move to strike a supplemental
declaration filed by Hamilton Fox, Gates' attorney at the
Superior Court trial, on the ground that the statements are
inadmissible evidence and not based on personal knowledge.  The
defendants' motion to strike the declaration will be denied, in
part because the declaration is based on personal knowledge and
admissible, and in part because the motion is moot.  Finally,
Gates moves for leave to file a surreply in response to new
factual arguments made by the defendants in the defendants'
reply to Gates' opposition to the defendants' motion for summary
judgment.  Gates' motion for leave to file a surreply will be
denied as moot.

BACKGROUND

In 1982, a D.C. Superior Court jury convicted Gates of
raping and murdering Catherine Schilling.  According to the
District, Gates' conviction was based primarily on testimony by
Smith, "other crimes" evidence, and microscopic pubic hair

---

Opp'n to the District of Columbia's Mot. for Summ. J. ("Gates'
Opp'n") at 3 n.2.  Thus, summary judgment will be entered
against Gates on Count Five.

analysis.  District of Columbia's Opp'n to Gates' Mot. for Partial Summ. J. ("District's Opp'n") at 4.  Smith identified Gates in a photo array and testified at trial that Gates confessed to him.  The other crimes evidence the District refers to consists of crimes Gates admitted to committing that the District claims occurred close in time to and bore some features in common with the Schilling rape and murder.  Finally, the FBI lab said that hair found on Schilling matched Gates' hair sample.  After a series of appeals, Gates' conviction was affirmed.  However, almost 30 years later, DNA evidence demonstrated Gates' innocence.  Following litigation in D.C. Superior Court, the D.C. Superior Court issued Gates a certificate of actual innocence.

Gates now brings claims against the District for unjust imprisonment, against Taylor, Brooks, Harlow ("the police defendants"), and unnamed MPD officers for violating Gates' right to a fair trial by fabricating evidence, failing to disclose exculpatory material, and failing to intercede to stop constitutional violations, and against the police defendants and Smith for conspiring to bring about his false conviction.

Gates filed for summary judgment on Count One alleging that the District is precluded from further litigation because the elements of Count One were already determined in Gates'

certificate of actual innocence and, alternatively, that there are no genuine disputes of material fact.

The defendants moved for summary judgment on Counts Two through Four, asserting qualified immunity and laches, and alleging that Gates presents no affirmative evidence to sustain his claims.

## DISCUSSION

Gates has moved for summary judgment under Federal Rule of Civil Procedure 56(a), which provides that if there is "no genuine dispute as to any material fact . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "To prevail on a motion for summary judgment, the moving party must show that the nonmoving party 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Akers v. Liberty Mut. Grp., 744 F. Supp. 2d 92, 95 (D.D.C. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  At this stage, however, all factual inferences must be taken in favor of the nonmoving party.  Cruz-Packer v. D.C., 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

I.   COUNT ONE: UNJUST IMPRISONMENT ACT, D.C. CODE § 2-421 ET
     SEQ.

     Count One, Gates' claim under D.C. Code § 2-421 et seq.,

requires that Gates prove:

> (1) That his conviction has been reversed or set aside
> on the ground that he is not guilty of the offense of
> which he was convicted, or on new trial or rehearing
> was found not guilty of such offense, as appears from
> the record or certificate of the court setting aside
> or reversing such conviction, or that he has been
> pardoned upon the stated ground of innocence and
> unjust conviction; and
> (2) That, based upon clear and convincing evidence, he
> did not commit any of the acts charged or his acts or
> omissions in connection with such charge constituted
> no offense against the United States or the District
> of Columbia the maximum penalty for which would equal
> or exceed the imprisonment served and he did not, by
> his misconduct, cause or bring about his own
> prosecution.

D.C. Code § 2-422.   There is no genuine dispute as to whether

Gates satisfies D.C. Code § 2-422(1) because Gates has provided

a certificate of actual innocence and an order to vacate Gates'

conviction.   District of Columbia's Response to Gates' Statement

of Material Facts Not in Dispute ¶ 16.   Moreover, the parties do

not dispute that Gates "did not commit any of the acts charged

or his acts or omissions in connection with such charge

constituted no offense against the [District of Columbia]."

D.C. Code § 2-422(2); District of Columbia's Response to Gates'

Statement of Material Facts Not in Dispute ¶ 17.   However, the

parties dispute whether the record establishes that, by clear

and convincing evidence, Gates "did not, by his misconduct,
cause or bring about his own prosecution." Id. ¶ 18.

Gates argues that the District is precluded from litigating
this element of D.C. Code § 2-422 because it was previously
litigated, along with the other elements of D.C. Code § 2-422,
in D.C. Superior Court when Gates sought his certificate of
actual innocence.  In the alternative, Gates asserts that
material facts are not genuinely disputed.  The District, on the
other hand, argues that it cannot be bound by the litigation in
D.C. Superior Court because the District was not a party to the
prior suit, which was between Gates and the U.S. Attorney's
Office, namely, the federal government.[2]  Further, the District

---

[2] The District claims that Gates' "attempts to elevate the
United States' authority to prosecute certain criminal offenses
in the District to a privity relationship with the District
ignores the separate sovereignty of these two entities."
District's Opp'n at 9.  The District points out that there is
"no contractual relationship, no shared property interest, and
no obligation for the District to pay any claim under the
federal unjust imprisonment act that Plaintiff had against the
United States arising from the United States' acknowledgement of
Plaintiff's actual innocence." Id.
    Gates opposes, arguing that, "[i]n the context of criminal
prosecutions, the District of Columbia and the United States are
the same party."  Mem. in Supp. of Gates' Mot. for Partial Summ.
J. on Liability on the Unjust Imprisonment Act Claim ("Gates'
Mot.") at 10.  Gates points out that Congress granted authority
to the U.S. Attorney's Office to prosecute District violations,
id. at 10 (citing D.C. Code § 23-101(c); In re Prosecution of
Crawley, 978 A.2d 608, 609-10 (D.C. 2009)), which means that
"the United States . . . acts as an arm of the District, the
role that local district attorneys play in other local
governments."  Gates' Mot. at 10 (citing Wilson v. United
States, 424 A.2d 130, 133 (D.C. 1980)); see also Goode v.

Markley, 603 F.2d 973, 976 (D.C. Cir. 1979) (affirming the District and federal government as a "single sovereign" as related to criminal violations). Gates further argues that even if the federal government and District are not the same party, they are in privity based on the "'pre-existing substantive legal relationship,' established by Congress, which gave the United States Attorney power to 'represent[] the government of the District of Columbia and its police' in criminal prosecutions." Gates' Reply to the District of Columbia's Opp'n to Gates' Mot. for Partial Summ. J. ("Gates' Reply") at 8 (quoting Taylor v. Sturgill, 553 U.S. 880, 894 & n.8 (2008); Wilson v. United States, 424 A.2d 130, 133 (D.C. 1980)); see also Modiri v. 1342 Rest. Grp., Inc., 904 A.2d 391, 396-97 (D.C. 2006) ("A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case."). Finally, Gates argues that "the relationship between the United States . . . and the District" is one of "[a] representative capacity." Gates' Mot. at 11 n.5.

"'Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by [a previous] judgment, although not formally a party to the litigation.'" Felter v. Salazar, 679 F. Supp. 2d 1, 10-11 (D.D.C. 2010) (quoting Ellentuck v. Klein, 570 F.2d 414, 425-26 (2d Cir. 1978)). Thus, on the one hand, whether the federal government could adequately represent the District is open to question since the federal government has no monetary incentive to litigate these claims because it is the District, not the federal government, which would pay any award of damages here. But see Holland v. Apfel, 23 F. Supp. 2d 21, 25 (D.D.C. 1998) aff'd sub nom. Holland v. Nat'l Mining Ass'n, 309 F.3d 808 (D.C. Cir. 2002) ("[T]he 'same interests' must mean something more than that the nonparty and the party are concerned with the same bottom-line result.").

On the other hand, the legislative history of the Unjust Imprisonment Act ("the Act") suggests that the District contemplated liability based on determinations of guilt or innocence litigated by non-District officials. According to the committee reviewing the Act, the "need for [the Act was] best illustrated by the situation of Mr. Bradford Brown[.]" Gates' Mot., Ex. A, Judiciary Committee Report on the Unjust Imprisonment Act ("Judiciary Committee Report") at 2. Like here, the federal government successfully prosecuted the defendant, Brown, in a jury trial and through the appellate process. Id. However, three years later, new evidence pointed to a new suspect who ultimately pled guilty. Id. at 2-3.

argues that a material dispute exists as to whether Gates caused or brought about his prosecution.

A. Preclusion

Gates asserts that collateral estoppel, also known as issue preclusion, resolves his claim under D.C. Code § 2-422. In particular, Gates argues that the District is precluded from litigating the issue of whether Gates, "by his misconduct, cause[d] or br[ought] about his own prosecution" because this element was a finding of fact made in support of Gates'

---

Brown's jury trial, appeals, and subsequent motion to vacate, like Gates' jury trial, appeals, and subsequent motion to vacate, were litigated by federal prosecutors. Letter from James A. Bensfield, Director of Training, Public Defender Service, to David A. Clarke, Councilman, District of Columbia (June 2, 1980) (on file) at 2 n.1.

The committee reviewing the Act made clear that "by referring to all offenses contained in the District of Columbia Code, the bill does not limit recovery to persons prosecuted by District officials or tried in the Superior Court of the District of Columbia, but rather permits suit by any person imprisoned for a D.C. Code offense." Judiciary Committee Report at 5. Further, the committee acknowledged that one "method[] by which an error may be acknowledged" under the Act is when "the criminal conviction was reversed or set aside on the grounds that the person convicted was not guilty of the offense[,]" id., which could be "based upon the record or certificate of the court . . . ." Id. at 6. The committee explicitly rejected "the suggestion that compensation be limited to prosecutions for which the District of Columbia has responsibility." Id. at 10.

Nevertheless, because preclusion can be resolved on other grounds, the issue of privity is not dispositive and need not be ecided here. (The D.C. Circuit has taken a similar course. See Moore v. United States, 344 F.2d 558, 560 n.8 (D.C. Cir. 1965) ("Under the view we take of this case we do not reach the question of whether the District of Columbia, which prosecuted the traffic violation, and the United States are the same for purposes of collateral estoppel." (citing Randolph v. D.C., 156 A.2d 686 (D.C. Mun. App. 1959)).

certificate of actual innocence.   Mem. in Supp. of Gates' Mot.
for Partial Summ. J. on Liability on the Unjust Imprisonment Act
Claim ("Gates' Mot.") at 5-12.

"Collateral estoppel . . . bars the re-litigation of issues
determined in a prior action 'where (1) the issue was actually
litigated; (2) was determined by a valid, final judgment on the
merits; (3) after a full and fair opportunity for litigation by
the party; [and] (4) under circumstances where the determination
was essential to the judgment.'"   DeWitt v. District of
Columbia, 43 A.3d 291, 300 (D.C. 2012) (quoting Wilson v. Hart,
829 A.2d 511, 514 (D.C. 2003)), cert. denied, 133 S. Ct. 449
(2012).

The requirement that an issue be "actually litigated" and
"necessarily determined" "protects . . . adversaries from the
expense and vexation attending multiple lawsuits, conserves
judicial resources, and fosters reliance on judicial action by
minimizing the possibility of inconsistent decisions."   Montana
v. United States, 440 U.S. 147, 153-54 (1979).   "An issue is
actually litigated when it 'is properly raised, by the pleadings
or otherwise, and is submitted for determination, and is
determined[.]'"   Ali Baba Co., Inc. v. WILCO, Inc., 482 A.2d
418, 422 (D.C. 1984) (quoting Restatement (Second) of Judgments §
27(d) (1982)); see also Oubre v. D.C. Dep't of Emp't Servs., 630
A.2d 699, 703 (D.C. 1993) ("[The issue must be] properly raised,

considered on the merits, and determined."). For instance, an issue is actually litigated if a party "submit[s] three sets of documentation as evidence[.]" Jahr v. D.C., Civil Action No. 00-02423 (EGS), 2013 WL 5182646, at *6 (D.D.C. Sept. 16, 2013) (finding that the issue of disparate treatment had been actually litigated in prior proceedings when plaintiff previously presented evidence of disciplinary actions against two similarly situated employees, information given to federal commission about three other terminations in the four prior years, and a letter from opposing counsel responding to a discovery request regarding former co-plaintiff); see also Pipher v. Odell, 672 A.2d 1092, 1095 (D.C. 1996); Davis v. Davis, 663 A.2d 499, 501 (D.C. 1995); Ali Baba Co., Inc., 482 A.2d at 425-26. On the other hand, an issue "never mentioned" in the pleadings, orders, or decrees would not have been actually litigated for the purposes of collateral estoppel. Goldkind v. Snider Bros., Inc., 467 A.2d 468, 473 (D.C. 1983). "The burden is on the party asserting preclusion to show actual decision of the specific issues involved." Major v. Inner City Prop. Mgmt., Inc., 653 A.2d 379, 382 (D.C. 1995).

The issue of whether Gates' misconduct caused or brought about his prosecution was not actually litigated in the court that issued Gates' certificate of actual innocence. To begin with, Gates failed to allege in the proceedings in D.C. Superior

Court that his misconduct did not cause or bring about his prosecution.[3]  The issue of whether Gates' misconduct caused or brought about his prosecution appeared in the record, for the first time, in Gates' motion for a certificate of actual innocence.  In that motion, Gates failed to allege, though, that his misconduct or neglect did not cause his prosecution.  Cf. Huffman v. Westmoreland Coal Co., 205 P.3d 501, 507 (Colo. Ct. App. 2009) ("Here, the issue was properly raised in the federal proceeding because plaintiff alleged the claims in his complaint against defendant.").  Rather, Gates merely asked the court to issue a certificate, noting that the certificate was a "prerequisite to a suit for damages against the United States for unjust conviction and imprisonment pursuant to 28 U.S.C. § 1495."  Gates' Mot., Ex. 29, Gates' Unopposed Mot. for Certificate of Actual Innocence at 1 ("Gates' Mot. for Innocence").  Gates then informed the court of the elements required for a certificate under 28 U.S.C. § 2513, which includes a finding that the plaintiff did not, by his misconduct or neglect, cause or bring about his own prosecution.  Id. at 1

_____

[3] The post-conviction record included with Gates' motion for summary judgment consists of Gates' motion to vacate his conviction, the federal government's opposition, the court transcript from a hearing on the motion, the federal government's motion in which it changed its position and joined Gates' motion to vacate, Gates' motion for a certificate of actual innocence, the order granting Gates' motion to vacate his conviction, and Gates' certificate of actual innocence.

(citing 28 U.S.C. § 2513).  Gates did not provide in the motion any factual basis for the D.C. Superior Court to determine the causal relationship between Gates' conduct and his prosecution. Id.  Moreover, no argument or reasoning that Gates' misconduct did not cause his prosecution was advanced in either Gates' motion to vacate his conviction or during the court's hearing on that motion.  See Gates' Mot., Ex. 22, Gates' Mot. to Vacate Convictions on the Grounds of Actual Innocence; Gates' Mot., Ex. 28, Tr. of Oral Argument ("Tr. of Oral Argument"); cf. Borger Mgmt., Inc. v. Sindram, 886 A.2d 52, 62-63 (D.C. 2005) ("[T]he term 'actually litigated' is not limited to just what is [pled] on paper but also what is presented, considered and determined . . . .  [Here, the issue was] 'actually litigated' in that [the party] had to argue the [issue] in order to overcome the presumption in favor of [the opposing party].").

Even if Gates properly raised the issue of whether his misconduct or neglect caused his prosecution in D.C. Superior Court, the issue was not actually litigated because the federal government presented no facts or argument on the issue.

> An issue is not actually litigated if . . . it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; nor is it actually litigated if it is the subject of a stipulation between the parties.

RESTATEMENT § 27 cmt. e.  When parties enter into an agreement or stipulation to a relevant issue, the resulting record "provides no indication that the [factfinder] . . . ever considered [the issue] during the course of its deliberations." Jonathan Woodner Co. v. Adams, 534 A.2d 292, 296 (D.C. 1987).  The "issues dealt with in [stipulated] judgments are not 'actually litigated' for the purpose of issue preclusion." Amador Cnty., Cal. v. Salazar, 640 F.3d 373, 384 (D.C. Cir. 2011) (citing Otherson v. Dep't of Justice, INS, 711 F.2d 267, 274 (D.C. Cir. 1983)).  As a result, in situations such as these, the court must "decline to make . . . an inference" that the issue was actually litigated and essential to the judgment.  Jonathan Woodner Co., 534 A.2d at 296.

The federal government's choice not to make an issue of whether Gates' misconduct caused or brought about his prosecution is akin to facts proven by consent or stipulation that are not "actually litigated."  The federal government did not discuss the issue of whether Gates' misconduct or neglect caused or brought about his prosecution in its opposition to Gates' motion to vacate, at the hearing on Gates' motion to vacate, in its motion to join Gates' motion, or in the context of Gates' motion for a certificate of actual innocence.  Gates' Mot., Ex. 23, Gov't Resp. to Gates' Mot. to Vacate Convictions Based on Actual Innocence; Tr. of Oral Argument; Gates' Mot.,

Ex. 25, Gov't Mot. to Join in Gates' Mot. to Vacate Convictions
on the Grounds of Actual Innocence.  Indeed, the federal
government did not oppose Gates' request for a certificate of
actual innocence.  Gates' Mot. for Innocence at 1.  On this
issue, in particular, the court lacked the benefit of an
adversarial process to determine the facts because the federal
government provided no opposition.  Instead, the parties
presented the issue in a way that "short-circuit[ed] the merits"
of whether, by any misconduct, Gates caused his prosecution;
"actual litigation" involves "something more" than this.[4]  In re
Kane, 254 F.3d 325, 329 (1st Cir. 2001) (citing RESTATEMENT § 27
cmt. e).

Finally, the reviewing court's conclusory declaration in
response to the limited factual record created by the parties
that no misconduct or neglect by Gates caused his prosecution
was not a determination of the issue adequate to preclude the
parties from litigating the issue.[5]  In situations "when the

---

[4] "The judgment may be conclusive, however, with respect to
one or more issues, if the parties have entered an agreement
manifesting such an intention."  RESTATEMENT § 27 cmt. e.  This
record contains no agreement manifesting an intent by the
parties that the Superior Court judgment be conclusive on this
issue.

[5] The validity of the certificate is not at issue here.
"Whether to issue such a certificate is committed to the
discretion of the presiding judge," Rigsbee v. United States,
204 F.2d 70, 72 (D.C. Cir. 1953) (citation omitted), and would

record does not clearly disclose the grounds on which the first decision was based, that decision cannot be given collateral estoppel effect." Major, 653 A.2d at 382.  "Issue preclusion attaches only to issues or questions of fact actually litigated and determined, not those that merely lurk in the record before the court." Pinshaw v. Metro. Dist. Comm'n, 524 N.E.2d 1351, 1359 (Mass. 1988) (internal citations omitted).

In issuing Gates' certificate of actual innocence, the court merely stated, "Donald Gates did not by misconduct or neglect cause or bring about his own prosecution or conviction."[6] Gates' Mot., Ex. 27, Certificate of Actual Innocence ¶ 9.  The court "did not reveal what was in [its] mind or in any way intimate that [it] had [judged] the issue." Major, 653 A.2d at 383; see also Ellwell v. Ellwell, 947 A.2d 1136, 1140 (D.C. 2008).  This sentence merely quoted the statutory language of 28 U.S.C. § 2513.  Found at the end of the certificate, the sentence "tells us nothing about the reasons for the [result]." Major, 653 A.2d at 383.  Therefore, it "cannot" be said that the issue was "necessarily decided by the [previous court] on a ground that would collaterally estop [the defendants]." Id.

---

be reviewable on appeal.  Instead, whether the certificate presents preclusive findings of fact is the issue here.

[6] Whether Gates' misconduct caused his prosecution was not factually analyzed in the certificate, or in any other document from the previous litigation presented here in the materials for summary judgment.

As a result, the District is free to litigate the issue of whether Gates' misconduct caused or brought about his prosecution.  As is discussed below, this issue is genuinely in dispute, so Gates' motion for summary judgment on this ground will be denied.

B.  Evidentiary dispute

The District presents Gates' prior criminal history and alleged confession as evidence that the cause of Gates' prosecution is in dispute.  District's Opp'n at 15-16.  Gates argues that the prior criminal history evidence is not relevant and that the alleged confession is not admissible, so summary judgment should be entered for Gates.  Gates' Reply to the District of Columbia's Opp'n to Gates' Mot. for Partial Summ. J. ("Gates' Reply") at 11, 15.

1.  Prior criminal history

Outside of the confession, discussed below, the only evidence of misconduct the District presents is arrests for and confessions to other crimes that occurred in the year leading up to Gates' prosecution in this case.  District's Opp'n at 17-18. The criminal activity the District discusses were acts completed independently from the crime in this case involving different victims.  The District does not allege that the actions underlying past crimes are sufficient to establish any of the essential elements of the charges in Schilling's rape and

murder.  Moreover, the actions associated with past crimes were not part of the same enterprise of illegal activity.  This evidence, then, is immaterial to the "misconduct" required in D.C. Code § 2-422, and cannot be used as a basis to deny summary judgment.

The legislative history of the Unjust Imprisonment Act supports this result.  The D.C. Council committee that introduced the bill gave the following examples of misconduct: "falsely giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony or concealing the guilt of another."  Gates' Mot., Ex. A, Judiciary Committee Report on the Unjust Imprisonment Act ("Judiciary Committee Report") at 8.  None of these examples of "misconduct" encompasses prior arrests, charges, confessions, or convictions of the sort the District presents in this case.

The interpretation of an analogous federal statute, 28 U.S.C. § 2513, also fails to support including past criminal history.[7]  The federal definition of conduct that could potentially bar recovery is broader than that of the D.C. Code.

---

[7] This case presents a rare opportunity for a court to address the meaning of "misconduct" in D.C. Code § 2-422.  The case law interpreting the federal statute is informative because the language is similar.  In addition, in discussing relevant "misconduct," the defendants cite only cases that refer to the federal statute.  District's Opp'n at 17-18.

Compare 28 U.S.C. § 2513(a)(2) (defining the relevant conduct as
"misconduct *or neglect*") (emphasis added), with D.C. Code § 2-
422(2) (including only "misconduct").  Gates' conduct would not
bar his recovery under the broader federal statute, and the same
conduct should not bar recovery under the narrower D.C. Code.

"Congress intended [the federal statute] to preclude a
certificate [of actual innocence] '[w]here there has been an
attempt to flee, a false confession, the removal of evidence, or
an attempt to induce a witness or an expert to give false
testimony or opinion, or an analogous attempt to suppress such
testimony or opinion.'"  United States v. Graham, 608 F.3d 164,
173-74 (4th Cir. 2010) (quoting Betts v. United States, 10 F.3d
1278, 1285 (7th Cir. 1993)).  Nothing on this list is analogous
to prior misconduct or prior criminal history of the sort that
the District offers in this case.  While statutes waiving
sovereign immunity should be narrowly construed, they should not
be given meaning that is unsupported by the statute's text or
legislative history, or by precedent.  See generally Gwinn v.
District of Columbia, 434 A.2d 1376, 1378 (D.C. 1981) ("Because
[the D.C. Code and federal statute are] in derogation of the
common law [concept of sovereign immunity], the section[s are]
to be strictly construed."); see also City of Farmington, N.M.
v. Fed. Energy Regulatory Comm'n, 820 F.2d 1308, 1315 (D.C. Cir.
1987) ("'Where the language is plain and admits of no more than

one meaning the duty of interpretation does not arise and the
rules which are to aid doubtful meanings need no discussion.'"
(quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))).

The federal statute has been interpreted to include conduct
only when the conduct relates to the specific allegations at
issue in the conviction.  For instance, the court may find that
while the defendant's actions underlying the original conviction
may not have been criminal, the actions were "at the very least
negligent" conduct that caused his prosecution.  Graham, 608
F.3d at 170.  In Graham, the evidence was "insufficient to prove
his guilt beyond a reasonable doubt, [but] certainly shows that,
in a general sense, [Graham] brought about his own prosecution"
because he was not "truly innocent[.]"  United States v. Graham,
595 F. Supp. 2d 681, 684-86 (S.D.W.Va. 2008), aff'd, 608 F.3d
164 (4th Cir. 2010).  Graham's actions were a "sordid tale of
abuse of a position of public trust for his own personal
benefit."  Id. at 686.  Although Graham may not have acted
knowingly in violating the law, as required for conviction, he
acted negligently.  Id. (finding that, although Graham's failing
to seek approval before cashing out sick leave, which was
required by his contract, was insufficient proof beyond a
reasonable doubt that Graham stole from the company, it was
sufficient to find him at minimum, negligent).

The federal statute also includes conduct where a defendant attempts to cover up the underlying criminal act -- which does not extend to prior criminal history.  See, e.g., United States v. Keegan, 71 F. Supp. 623, 638 (S.D.N.Y. 1947) (providing the following examples of misconduct: "an attempt to flee, a false confession, the removal of evidence, or an attempt to induce a witness or an expert to give false testimony or opinion, or an analogous attempt to suppress such testimony or opinion" (internal citations omitted)).  "The clearest example would be the defendant who either falsely confesses to a crime or intentionally withholds exculpatory evidence . . . ."  Betts, 10 F.3d at 1285.

The District offers no support for the notion that conduct unrelated to the underlying acts charged can serve the basis of the "misconduct or neglect" under the federal statute, much less "misconduct" under the D.C. Code.  The current case law does not support such a broad reading of "misconduct or neglect."  The District cannot extend "misconduct" in the D.C. Code to include past events that have nothing to do with the conduct in the particular case in which the court vacated Gates' conviction. The District presents no evidence that Gates was guilty of some other act of misconduct that took place at the same time as the Schilling murder and rape.  The District identifies only evidence wholly unrelated to the underlying conviction.

The District does not succeed by citing among Gates' prior acts some that were also criminal.  Even under the federal statute, such an effort has failed.  See, e.g., Eastridge v. United States, 602 F. Supp. 2d 66, 71 (D.D.C. 2009), aff'd sub nom. Diamen v. United States, 604 F.3d 653 (D.C. Cir. 2010) (finding the following evidence "totally unpersuasive" as misconduct that could have caused the defendant's prosecution: refusing to give information to the police about a suspect, withholding information about a felony, attempting to help someone escape from a crime scene, driving after consuming a large quantity of alcohol, failing to call the police to report a shooting, concealing unused knives, being drunk in public in violation of the D.C. Code).  Instead, "'[t]he statutory phrase [in a previous version of the federal statute] 'in connection with such charge' was meant to preclude the proof of some contemporaneous, but unrelated crime to bar recovery.'"  Id. Here, "[m]uch of the alleged 'misconduct' on which the Government relies [i]s, even if accurate, unrelated to the actual crime charged . . . ."  Id.; see also Betts, 10 F.3d at 1285 ("The statute expressly requires a causal connection between the petitioner's conduct and his prosecution; it does not preclude relief simply because the petitioner engaged in misconduct or neglect, period.").

The District's theory of "misconduct" in D.C. Code § 2-422 is overbroad.  Under the District's reading of "misconduct," anyone who has been rightfully convicted or arrested of a crime in the past is no longer able to recover under D.C Code § 2-422. This would limit the act too narrowly.  Although Gates may have engaged in misconduct at some point in his life, not all of it is relevant to the definition of misconduct in D.C. Code § 2-422.  Relevant conduct would include acts that occur during the time of the crime at issue or immediately afterwards.  The record, however, reflects that Gates was not at the scene of the rape and murder, nor was he running from the area at the time the body was found or trying to destroy evidence, nor was he participating in some lesser crime or misconduct with Schilling that "almost" amounted to murder and rape.  The District's effort to stretch the definition of misconduct in order to assert that Gates caused or brought about his prosecution is not supported by case law.  Gates' previous misconduct, legally, is separate and distinct from the events in Schilling's rape and murder.  The District cannot take just any evidence of prior bad acts in order to restrict Gates' recovery for the prosecution of a distinct crime.

Thus, the District has failed to provide evidence necessary to survive summary judgment on account of Gates' criminal history.

2.   Alleged confession

Evidence of Gates' alleged confession is sufficient to provide a genuine dispute of material fact for the District to defeat Gates' motion for summary judgment on Count One.  The District presents evidence regarding Gates' confession to Smith, a police informant.  District's Opp'n at 16 (citing Defs.' Statement ¶¶ 3-4, 9-12, 16).  Gates does not dispute that Smith testified regarding the confession at trial.  Id. at 2; Defendants' Mem. of P. & A. ("District's Mot."), Ex. 4, Gates' Dep. ("Gates' Dep.") 66:19-71:9; Gates' Reply at 10.  Nor can it be disputed that an uncoerced confession is material.  The legislative history for D.C. Code § 2-422 lists examples of misconduct, which includes "falsely giving an uncoerced confession of guilt[.]"  Judiciary Committee Report at 8 (citation omitted).  Similarly, under the federal statute, "[t]he clearest example [of misconduct or neglect] would be the defendant who . . . falsely confesses to a crime."  Betts, 10 F.3d at 1285.  Gates' recovery under Count One is likely to turn on whether Gates confessed to Smith.

Gates asserts that Smith's statement regarding the alleged confession is inadmissible as hearsay without an exception and therefore cannot be considered at summary judgment.  Gates' Reply at 10-14 (citing Akers, 744 F. Supp. 2d at 96).  "To survive summary judgment the non-moving party must 'produce

evidence . . . capable of being converted into admissible evidence.'" Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1369 (D.C. Cir. 2000) (citing Celotex Corp., 477 U.S. at 324); Fed. R. Civ. P. 56(e))); see also Shea v. Kerry, 961 F. Supp. 2d 17, 44 n.10 (D.D.C. 2013). The court must be satisfied that "it is *possible* to convert potential evidence into a form that would be admissible at trial." America v. Mills, 654 F. Supp. 2d 28, 36 (D.D.C. 2009) (emphasis added) (citing Wilburn v. Robinson, 480 F.3d at 1143 n.2; Richards v. Option One Mortg. Corp., Civil Action No. 08-0007 (PLF), 2009 WL 2751831, at *1-2 n.3 (D.D.C. Aug. 28, 2009)).

If Smith's statements regarding Gates' alleged confession are out of court statements proffered for the truth of whether Gates confessed, they may fit into a hearsay exception. For instance, Smith "cannot recall one way or the other anything about Mr. Gates or Mr. Gates' criminal trial." District's Opp'n at 16. This may make him an unavailable witness.[8] As such, his statements might be admissible under Rule 804 as former

---

[8] When a witness is unavailable, the transcript of his or her prior testimony becomes admissible. United States v. Bowman, 609 F.2d 12, 19 (D.C. Cir. 1979). At this time, the transcript of Gates' trial is unavailable. However, the transcript may become available before this case proceeds to trial. It is too early to declare with certainty whether and which evidence is admissible, whether a witness is unavailable, or how to proceed if the transcript is unavailable.

testimony.  Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d

1299, 1317 (11th Cir. 2013) (discussing Rule 804(a)(3)

(citations omitted)).  Alternatively, the District may be able

to refresh Smith's recollection with details of what he said at

trial, as recounted in the government's filing in response to

Gates' appeal following his conviction and sentencing.

District's Opp'n, Ex. 1, Appeal from the Superior Court of the

District of Columbia Criminal Division ("Gov't Brief on

Appeal"), at 6-8.

Even if there is no exception, Gates' alleged confession is

a key material issue in this case that could possibly be

admitted under Federal Rule of Evidence 807.[9]  Barry v. Trustees

of Int'l Ass'n Full-Time Salaried Officers, 467 F. Supp. 2d 91,

103 (D.D.C. 2006) ("Rule 807 . . . authorizes courts to admit

hearsay statements that do not fall under one of the exceptions

enumerated in the rules." (citing Fed. R. Ev. 807)); see also

United States v. Washington, 106 F.3d 983, 1001 (D.C. Cir. 1997)

(asserting that the exception is "extremely narrow and requires

testimony to be very important and very reliable" (internal

---

[9] It is also possible that Gates could testify about what he
remembers regarding Smith's testimony at the trial.  Gates' Dep.
66:19-71:9.  Gates' statements at his deposition could fall
under a hearsay exception for former testimony or statements
made against interest.  Fed. R. Ev. 804(b)(1), (3).  Williamson
v. United States, 512 U.S. 594, 599 (1994) ("Rule [804(b)(3)] is
founded on the commonsense notion that reasonable people, even
those who are not especially honest, tend not to make self-
inculpatory statements unless they believe them to be true.").

citations omitted)).  In order to fit into this exception, the court must conclude that the testimony "bears adequate 'indicia of reliability'" or "'particularized guarantees of trustworthiness.'"  Crawford v. Washington, 541 U.S. 36, 40 (2004) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)).  Assessing Smith's credibility is best reserved for trial. Anderson, 477 U.S. at 249; see also Arrington v. United States, 473 F.3d 329 (D.C. Cir. 2006).

The admissibility of the statement does not need to be determined definitively at this juncture.  "It is not this court's role to sift through . . . and parse out inadmissible evidence from that which is properly before this court." Akers, 744 F. Supp. 2d at 98 (citations omitted); see also Potter v. District of Columbia, 558 F.3d 542, 553 (D.C. Cir. 2009) (stating that "judges are not like pigs, hunting for truffles buried in . . . the record" (citations omitted)).  "Nor is it appropriate for the court to speculate as to what arguments the defendant might put forth with regard to the admissibility of this evidence." Akers, 744 F. Supp. 2d at 98 (citations omitted).  Instead, summary judgment requires the court to take all inferences in the light most favorable to the nonmoving party. Cruz-Packer, 539 F. Supp. 2d at 189.  The District has provided "sufficient, potentially admissible" evidence regarding

Gates' alleged confession to Smith and therefore will survive

summary judgment on Count One.  Shea, 961 F. Supp. 2d at 44.

II.  COUNTS TWO, THREE, AND FOUR, 42 U.S.C. § 1983[10]

Gates alleges that he was denied a fair trial because the

police defendants fabricated evidence and withheld material

exculpatory information and impeachment evidence (Count Two).

Further, Gates alleges the police defendants failed to intercede

on behalf of Gates to prevent the violation of his clearly

established constitutional rights (Count Three).  Finally, Gates

claims that the police defendants and Smith, a police informant,

conspired to violate Gates' constitutional right not to be

deprived of liberty without due process of law and right to a

fair trial (Count Four).  The defendants move for summary

judgment on Counts Two, Three, and Four, claiming that Gates has

no affirmative evidence of these allegations, Gates is barred on

the basis of laches, and the police defendants are protected by

qualified immunity.

     A.   Count Two

Count Two advances a section 1983 claim that the police

defendants violated Gates' right to a fair trial.  Gates alleges

---

[10] Section 1983 provides that "[e]very person who . . .
subjects, or causes to be subjected, any citizen of the United
States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding
for redress . . . ."  42 U.S.C. § 1983.

that the police defendants fabricated Gates' confession to
Smith, fabricated a photo identification procedure, and violated
Brady v. Maryland, 373 U.S. 83 (1963), by suppressing material
exculpatory information.  The police defendants assert that
summary judgment is appropriate because Gates has not presented
affirmative evidence to support any of these claims.

      1.    Gates' claim under 42 U.S.C. § 1983 based on
            fabricated evidence (a confession and photo
            identification)

The police defendants are not entitled to summary judgment
on Count Two because there is a genuine, disputed material fact
regarding the police defendants' conduct when they investigated
Gates.  In particular, the parties dispute whether Smith
reported that Gates confessed to Schilling's rape and murder.
The police defendants present evidence that they received Gates'
name from Smith when Smith contacted the police with information
about Schilling's rape and murder.  District's Mot. at 7.  The
police defendants further assert that Smith told them that Gates
confessed to Smith, and that Smith later identified Gates in a
photo identification procedure.  Id. at 33-35.  However, Gates
asserts that he never met Smith and never confessed to the crime
to Smith, and presents affirmative evidence to support this
claim.

a.  *The issues in dispute are material*

Summary judgment is not appropriate when there are
genuinely disputed "material" facts.  Fed. R. Civ. P. 56(a).  In
other words, "[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly
preclude the entry of summary judgment."  Anderson, 477 U.S. at
248.  Here, there are two disputed issues that are material:
whether Gates met Smith and whether Gates confessed to Smith.

These issues are material because either "might affect the
outcome" of Gates' section 1983 claims.  If a jury concluded
that Gates did *not* meet Smith before the trial, the jury could
conclude that Gates never confessed to Smith.  Then, the jury
would have a reasonable basis to conclude that the police
defendants fabricated the confession and were "'the moving force
behind the constitutional violation[.]'"  Konah v. D.C., 971 F.
Supp. 2d 74, 83 (D.D.C. 2013) (quoting Baker v. District of
Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal
quotation marks and citations omitted)).  There would also be a
reasonable basis for the jury to conclude that Smith would not
have been able to identify Gates in a photo array because Smith
had never met Gates.  Moreover, there would be a reasonable
basis for the jury to conclude that when the police defendants
said that "[Smith] identified Donald Gates from a photo array as
the man who confessed," District's Mot. at 7, the police

defendants fabricated evidence about the photo identification procedure.

Likewise, if a jury concluded that Gates never confessed to Smith, the jury would have a reasonable basis to conclude that the police defendants fabricated evidence of the confession. The jury would also have a reasonable basis to conclude that the police defendants fabricated the photo identification because Smith would not have been able to select Gates in a photo array as the perpetrator of the crime, because Smith would have no reason to believe Gates was involved had there not been a confession.

Alternatively, if a jury concluded that Gates and Smith indeed met or that Gates confessed to Smith, the jury would have a reasonable basis to conclude that none of the police defendants fabricated evidence.[11]  The issues of whether Gates and Smith met and whether Gates confessed to Smith are vital to evaluating Gates' section 1983 claim.  As such, these are disputed material facts that will preclude summary judgment.

_____

[11] This issue is not precluded even if Gates raised this defense at his trial.  One element of preclusion is that the issue was essential to the outcome.  DeWitt, 43 A.3d at 300. Even if Gates litigated at trial whether Smith met Gates, the issue cannot be given preclusive effect because it remains unknown whether that issue was essential to the jury in convicting Gates.  Indeed, the prosecutor told the jury in the closing argument not to rely on Smith's testimony.  District's Mot., Ex. 11, Harrington Dep. 179:22-180:3.

b.  *Gates presents sufficient evidence of the*
        *disputed issues*

Gates presents at least two types of affirmative evidence
to demonstrate that there are genuine disputes that defeat
summary judgment.  See Matsushita Elec. Indus. Co., Ltd. v.
Zenith Radio Corp., 475 U.S. 574, 587 (1986) (requiring specific
facts); Anderson, 477 U.S. at 249-50 (requiring evidence that is
sufficiently probative, not merely colorable).  Gates presents
his own deposition and the police defendants' conflicting
depositions.

Summary judgment is inappropriate because Gates' deposition
is materially different from the facts that the police
defendants present, and, as Gates argues, the police defendants'
credibility is in dispute.  Gates' Mem. of P. & A. in Opp'n to
the District of Columbia's Mot. for Summ. J. ("Gates' Opp'n") at
20-22.  "[A] non-movant's affidavit may suffice to defeat a
summary judgment motion if the parties' sworn statements are
materially different."  Curtis v. Lanier, 535 F. Supp. 2d 89, 94
n.7 (D.D.C. 2008) (citing Greene v. Dalton, 164 F.3d 671, 674-75
(D.C. Cir. 1999)); Arrington, 473 F.3d at 337); see also Mazloum
v. D.C. Metro. Police Dep't, 522 F. Supp. 2d 24, 40-41 (D.D.C.
2007) (citations omitted) (denying summary judgment when the
parties' sworn deposition statements differed about the
occurrence of a material fact).  Moreover, "if material facts

are susceptible to divergent inferences, summary judgment is not
available, because all inferences must be drawn in favor of the
non-moving party." Coward v. ADT Sec. Sys., Inc., 194 F.3d 155,
158 (D.C. Cir. 1999) (citing Alyeska Pipeline Serv. Co. v. U.S.
Envtl. Prot. Agency, 856 F.2d 309, 314 (D.C. Cir. 1988)).  At
summary judgment, "statements made by the party opposing a
motion for summary judgment must be accepted as true for the
purpose of ruling on that motion." Greene, 164 F.3d at 675
(citing Delange v. Dutra Constr. Co., 153 F.3d 1055, 1058 (9th
Cir. 1998); Lefkowitz v. Citi-Equity Group, Inc., 146 F.3d 609,
611 (8th Cir. 1998); Huckabay v. Moore, 142 F.3d 233, 240 (5th
Cir. 1998)).  Then, summary judgment must be denied if "the[]
allegations are indisputably sufficient to support a verdict
against the [moving party].  The allegations may, of course, be
false.  That is a question not for the court, however, but for
the jury." Id. at 674 (citing Gary v. Long, 59 F.3d 1391, 1397
(D.C. Cir. 1995)).

        Here, Gates states that he never met or confessed to Smith.
Gates' Dep. 67:18-68:5, 81:2-7.  At the summary judgment phase,
as the nonmoving party, the court must assume this statement is
true.  Greene, 164 F.3d at 675 (citations omitted).  If it is
true that Gates had never met Smith, then Smith could have heard
no confession from Gates to recount, and evidence from the
police defendants that Smith gave them Gates' name could be open

to doubt.  The jury, not the court, would have to decide whether Gates is credible.  <u>Anderson</u>, 477 U.S. at 257.

Gates' statement is sufficient for him to survive summary judgment because Gates is straightforward in his claim that he never met Smith.  Courts have denied summary judgment, as long as the "testimony was not contradictory or rife with inconsistencies such that it was facially implausible."  <u>Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 726 (2d Cir. 2010).  Gates consistently states that he never met Smith.  Gates' Dep. 67:18-68:5, 81:2-7; Gates' Opp'n, Ex. 40, Fox Decl. at ¶ 15.  Although Smith testified at trial that he met Gates, Gates' Mot., Ex. 1, Brief in Opp'n to Gates' Appeal at 7, a jury would have to determine whether this meeting happened.

In addition, the police defendants' conflicting testimonies about when they learned Gates' name from Smith present credibility determinations that a jury would have to make.  A jury must "[s]ort[] out the[] contradictions, decid[e] how much weight to give evidence that supports or undermines the [police defendants'] case, and evaluat[e] how much credibility to assign [the police defendants'] . . . statements[,]" as these are "prototypical jury functions that courts may not commandeer." <u>Estate of Parsons v. Palestinian Auth.</u>, 651 F.3d 118, 124 (D.C. Cir. 2011) (citing <u>Anderson</u>, 477 U.S. at 255); <u>see also</u> <u>In re Korean Air Lines Disaster of Sept. 1, 1983</u>, 932 F.2d 1475, 1481

(D.C. Cir. 1991) ("When 'questions [of willful misconduct]
depend upon inferences to be drawn from essentially
circumstantial evidence . . . [o]ne can hardly imagine a clearer
case in which such questions should have been left to the
jury.'" (quoting Berner v. British Commonwealth Pacific
Airlines, 346 F.2d 532, 538 (2d Cir. 1965)).  The Court must
"eschew making credibility determinations or weighing the
evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir.
2007).

A jury would have to determine who is credible after
hearing conflicting testimonies from Harlow, Brooks, and Taylor
about when each police defendant learned Gates' name from
Smith.[12]  Taylor stated that he received Gates' name from Harlow,
after Harlow spoke with Smith over the phone.  District's Mot.,
Ex. 21, Taylor Decl. ("Taylor Decl.") ¶ 9.  However, Harlow
stated that he did not learn Gates' name while on the call with
Smith.  District's Mot., Ex. 18, Harlow Dep. 237:10-241:7,
249:8-250:18.  Brooks, on the other hand, stated that he learned
Gates' name from Taylor after Taylor interviewed Smith.  Gates'
Opp'n, Ex. 17, Brooks Dep. 173:20-174:16.  Taylor, on the other

---

[12] The police defendants concede that they learned Gates'
name before Smith recounted Gates' confession.  However, a key
question is when the police defendants heard *Smith say* the name
"Donald Gates."  District's Opp'n to Gates' Mot. for Leave to
File Sur-reply ¶ 2 (citing District's Mot. at 36; District's
Reply at 7).

hand, stated that Brooks was in the interview with him.  Taylor
Decl. ¶ 9-10; District's Mot., Ex. 22, Taylor Dep. 393:15-22,
394:17-22.  Taken in the light most favorable to Gates, Cruz-
Packer, 539 F. Supp. 2d at 189 (citing Anderson, 477 U.S. at
244), there is a reasonable basis for a jury to find the police
defendants' explanations regarding when they learned Gates' name
from Smith to be "unworthy of credence[.]"  Reeves v. Sanderson
Plumbing Prod., Inc., 530 U.S. 133, 147 (2000) (citing St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 517 (1993)).  Although
conflicting testimonies would be "simply one form of
circumstantial evidence that is probative[,] . . . it may be
quite persuasive."  Id.  It is the jury that is solely
responsible for determinations of credibility; it would have to
determine whether discrepancies are the result of fabricated
evidence or the passage of over 30 years since Gates'
investigation and prosecution.

Together, the evidence presents a material dispute as to
when the police defendants received the name "Donald Gates" from
Smith, if at all.  "On the record at hand, . . . [no] court can
conclude that [the defendants]' story is truthful and [Gates']
story is a fabrication, at least not if all of the evidence is
viewed in the light most favorable to [Gates] as required by
Federal Rule of Civil Procedure 56(c)."  Arrington, 473 F.3d at
338; see also Taylor v. City of New York, Civil Action No. 03-

6477, 2006 WL 1699606 (RLC), at *4 (S.D.N.Y. June 21, 2006)
("Although the evidence of falsification is certainly not
overwhelming, there are enough inconsistencies in the stories of
the police . . . to preclude summary judgment.  Resolving all
inconsistencies in the light most favorable to the plaintiff, a
reasonable jury could find that the indictment was secured
through bad faith or perjury.").  "And because the resolution of
this issue involves credibility determinations, the weighing of
the evidence, and the drawing of legitimate inferences from the
facts, it is inappropriate for summary judgment." Arrington,
473 F.3d at 332.

> 2.   Gates' claim under 42 U.S.C § 1983 based on a
>      Brady violation

Gates also alleges that the police defendants are liable
under section 1983 because they violated Brady v. Maryland when
they failed to disclose impeaching information about Smith.
Gates' Opp'n at 26-27.  In opposition, the District asserts that
the undisclosed evidence is merely cumulative because of the
extensive information already revealed about Smith before trial,
and that Gates' trial attorney, Hamilton Fox, could have delved
into specific details when Fox cross-examined Smith.  District's
Mot. at 37-40.

Under Brady, "the suppression by the prosecution of
evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.   "[L]aw enforcement officers have a correlative [Brady] duty to turn over to the prosecutor any material evidence that is favorable to a defendant[.]" Drumgold v. Callahan, 707 F.3d 28, 39 (1st Cir. 2013) (citing Moldowan v. City of Warren, 578 F.3d 351, 381 (6th Cir. 2009); McMillian v. Johnson, 88 F.3d 1554, 1567 (11th Cir. 1996)).  Brady evidence is "material" when "there is a reasonable probability that, had the [evidence] been disclosed to [Gates], the result of the [trial] would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "In Kyles, the Court . . . elaborated on the meaning of materiality under Bagley, stressing that a reviewing court must focus on the fairness of the trial the defendant actually received rather than on whether a different result would have occurred had the undisclosed evidence been revealed." United States v. Smith, 77 F.3d 511, 514 (D.C. Cir. 1996) (citing Kyles v. Whitley, 514 U.S. 419, 432 (1995); Bagley, 473 U.S. at 682). In addition, the court must assess the "net effect of the evidence withheld[.]" Kyles, 514 U.S. at 421, 436.

Here, the police defendants failed to disclose to the prosecutors evidence that another MPD detective did not believe Smith to be credible.  Further, if Gates proves that the police

defendants fabricated Gates' confession to Smith, the police
defendants caused a Brady violation by failing to turn over
evidence of the fabrication.[13]   However, Gates must still
"demonstrate by a preponderance of the evidence a causal link
between the injuries resulting from his conviction and the Brady
violation" in order to succeed under a section 1983 claim with
Brady as the basis.  Rodriguez v. Woodall, 189 Fed. App'x 522,
527 (7th Cir. 2006) (citations omitted); see also Drumgold, 707

---

[13] The parties agree that much of Smith's extensive criminal
history was disclosed.  See District's Mot. at 39-40; Gates'
Opp'n at 31; District's Reply at 12.  Further, the parties agree
that four charges against Smith were dismissed in exchange for
Smith's testimony in Gates' trial: three shoplifting charges and
a larceny after trust charge.  Gates' Opp'n, Ex. 35, Fox
Supplemental Decl. ("Fox Supp. Decl.") ¶ 4; Gov't Brief on
Appeal at 7 n.8; District's Reply at 12.

However, significant evidence about Smith was not
disclosed.  Hamilton Fox, Gates' trial attorney, states that the
prosecutors failed to disclose that the larceny after trust
charge was a felony, not a misdemeanor.  Fox Supp. Decl. ¶ 4.
Further, the prosecutors failed to disclose an additional felony
larceny charge that was dismissed prior to Smith's testimony in
Gates' case.  Id. ¶ 3.c; Gates' Opp'n, Ex. 29, Case File at *1,
*3, *5; District's Reply at 15.  Fox also states that the
prosecutors did not disclose that the charges had *already* been
dismissed at the time of Gates' trial.  Fox Supp. Decl. ¶ 4.
The prosecutors also failed to disclose specific details
underlying the larceny after trust charge -- namely that the
arrest occurred close to the time Smith came forward in the
Gates case, that the charge was dismissed two days before Gates'
arrest warrant was issued, and that the charge was based on
conduct in which Smith took $400 from the police after it was
given to Smith for use in a buy/bust operation.  Gates' Opp'n at
29-30; Fox Supp. Decl. ¶¶ 3.a-b, 3-4; Gates' Opp'n, Ex. 12,
Harrington Dep. 256:9-17, 268:8-12; District's Mot. at 39-40.
Taking all inferences in the light most favorable to the
nonmoving party, the larceny charge and larceny after trust
charge were dropped specifically in exchange for Smith's
testimony in Gates' trial.

F.3d at 48 (citations omitted).  In addition, there must be a
"reasonable probability" that the result would have been
"different" had the withheld impeachment information taken
cumulatively been turned over.[14]  Kyles, 414 U.S. at 419; see
also id. at 421, 436 (considering the evidence cumulatively).
"A 'reasonable probability' means the chances are high enough to
undermine confidence in the outcome."  United States v. Bowie,
198 F.3d 905, 908 (D.C. Cir. 1999) (quoting Kyles, 414 U.S. at
434).  "[A]n incremental amount of impeachment evidence on an
already compromised witness does not create a 'reasonable
probability' that the balance would have swung in favor of [the
defendant]."  United States v. Derr, 990 F.2d 1330, 1336 (D.C.
Cir. 1993).

The fact that one MPD detective did not find Smith credible
does not, on its own, necessarily, "shake[]" the confidence in
the conviction obtained at Gates' trial, Bowie, 198 F.3d at 909.
However, the cumulative effect of the failure to disclose
exactly which charges were dismissed in exchange for a witness's

---

[14] Without a trial transcript, however, it is hard to
determine the fairness of the trial that Gates actually received
because it is not clear what information regarding Smith's
credibility emerged at Gates' trial.  In addition, the record
does not include specifically what information was disclosed to
Gates prior to trial.  Instead, the record includes references
to Gates' trial transcript by the government in a motion for
appeal, references to Gates' trial transcript in an order
denying Gates' motion for a retrial, and Gates' trial attorney's
recollection.

testimony, as well as another detective's misgivings about the witness, can form the basis of a Brady violation.  United States v. Agurs, 427 U.S. 97, 113 (1976) ("[I]f the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.").  Given all the non-disclosures, confidence regarding Gates' initial conviction is undermined.  See generally Bagley, 473 U.S. at 678 (finding a violation when the suppressed evidence "undermines confidence" in the outcome).

Finally, had the police defendants fabricated Gates' confession to Smith, not disclosing such evidence would be a Brady violation.  It is squarely a Brady violation if the government "introduced trial testimony that it knew or should have known was perjured[.]"  Kyles, 514 U.S. at 433 (citing Agurs, 427 U.S. at 103-04).  This is true even if the police investigators shield the information from the prosecutor.  Jones v. City of Chi., 856 F.2d 985, 994 (7th Cir. 1998) ("[The police defendants] cannot hide behind the official whom they have defrauded.").  Here, had the police defendants known that Smith fabricated his testimony, as Gates alleged, this information should have been turned over as exculpatory.  Brady, 373 U.S. at 87; see also Manning v. Miller, 355 F.3d 1028, 1033 (7th Cir. 2004) (finding viable Brady claim based on "[s]uch actions includ[ing] inducing a witness to falsely identify [the

defendant] in a line-up, selecting [the police informant] to be
the jailhouse informant, and inducing [the police informant] to
create a false story.").  Because "the evidence is such that a
reasonable jury could return a verdict for the nonmoving
party[,]" summary judgment will be denied.  <u>Arrington</u>, 473 F.3d
at 333.

B.   <u>Counts Three and Four</u>

Gates' claims for failure to intercede (Count Three) and
conspiracy (Count Four) also survive summary judgment.  The
record evidence could allow a jury to conclude that the
individual defendants conspired to violate Gates' constitutional
right to a fair trial and the police defendants failed to
intercede during the course of the constitutional violations.
While

> a plaintiff alleging a civil conspiracy pursuant to
> § 1983 'need not produce direct evidence of a meeting
> of the minds,' the plaintiff must supply 'specific
> circumstantial evidence that each member of the
> alleged conspiracy shared the same conspiratorial
> objective,' and this evidence must 'reasonably lead to
> the inference that [the defendants] positively or
> tacitly came to a mutual understanding to try to
> accomplish a common and unlawful plan.'

<u>Austin v. District of Columbia</u>, Civil Action No. 05-2219 (JDB),
2007 WL 1404444, at *11 (D.D.C. May 11, 2007) (quoting <u>Hinkle v.
City of Clarksburg</u>, 81 F.3d 416, 421 (4th Cir. 1996)).
"Circumstantial evidence may permit a factfinder to infer that a

witness had knowledge of a particular fact despite his testimonial denial of knowledge." In re Dana Corp., 574 F.3d 129, 153 (2d Cir. 2009) (citing Smith v. California, 361 U.S. 147, 154 (1959)).

Differing renditions of the alleged constitutional violation, although "possibly innocent in nature, could . . . suffice to show that the parties shared a common objective and acted in concert." Austin, Civil Action No. 05-2219 (JDB), 2007 WL 1404444, at *11. In United States v. Davis, 562 F.2d 681 (D.C. Cir. 1977) (per curiam), three defendants "sought to minimize their presence at the apartment and to assert that all of them were largely ignorant of the ownership [of the contraband]." Id. at 687 (footnote omitted). One defendant "claimed to be unaware" of evidence of contraband other than the contraband he turned over to the police. Id. Another asserted that, although he paid one-third of the rent for the apartment, he was "merely" using the apartment for a "mailing address." Id. The third defendant "tried to escape knowledge" by asserting that he did not use the container in which the contraband was found. Id. Together, the defendants hypothesized that "an incompletely identified third person . . . who operated like a shadow in the dark apparently owned the drugs." Id. (citations omitted). (One defendant, though, "did allow that the drugs 'could have belonged to [one of the co-

defendants.]'"   Id.)   The court found this evidence sufficient
for a jury to hold the defendants liable for conspiracy.

Here, like in Davis, circumstantial evidence could lead a
jury to find a conspiratorial objective.  A jury could find that
the defendants shared a tacit understanding to fabricate Gates'
confession to Smith and Smith's photo identification of Gates.
A jury could also find the kind of self-minimization recognized
in Davis and conclude that each of the police defendants made an
effort to minimize the role he played in receiving the name
"Donald Gates" from Smith, see supra Part II.A.1.b, and that it
was coordinated behavior.  "Based on all the evidence, the jury
could disbelieve defendants' incriminatory denials and conclude
that each defendant was attempting to hide his knowledge of the
[fabricated evidence]."  Davis, 562 F.2d at 688.  This factual
dispute would have to be resolved by a jury, not the court on
summary judgment.

Further, if a jury concluded that the individual defendants
conspired to violate Gates' constitutional rights, the jury
could conclude that the police defendants should have intervened
and prevented the violation.  "Under the bystander theory of
liability an officer is held responsible for a constitutional
violation if he: (1) knows that a fellow officer is violating an
individual's constitutional right; (2) has a reasonable
opportunity to prevent the harm; and (3) chooses not to act."

<u>Fernandors v. D.C.</u>, 382 F. Supp. 2d 63, 72 (D.D.C. 2005) (citing

<u>Randall v. Prince George's County</u>, 302 F.3d 188, 204 (4th Cir.

2002)).  If a jury found that a conspiracy existed, then the

first prong of the <u>Fernandors</u> test would be met.  A jury would

then be in a position to determine whether there was time to act

and whether the police defendants chose not to act.  These, too,

are factual disputes for a jury.

III. OTHER CLAIMED BARRIERS TO LITIGATION

    A.   <u>Qualified immunity</u>

    The police defendants seek summary judgment in their favor,

asserting that the doctrine of qualified immunity protects

public officials from liability for civil damages for official

actions taken.  However, "qualified immunity does not shield

government officials who 'violate clearly established statutory

or constitutional rights of which a reasonable person would have

known.'" <u>Arrington</u>, 473 F.3d at 338-39 (quoting <u>Wilson v.

Layne</u>, 526 U.S. 603, 609 (1999)).  "[T]he Supreme Court

enunciated a two-step analysis for determining whether qualified

immunity applies.  First, the court must determine whether the

complainant alleges violations of constitutional rights.  If

constitutional violations are alleged, the court must next

determine whether the right allegedly violated is clearly

established." <u>Arrington</u>, 473 F.3d at 339 (citing <u>Saucier v.

Katz</u>, 533 U.S. 194, 201 (2001)).  The court has the "discretion

to decide which of the two prongs of [the] qualified-immunity analysis to tackle first." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citing Pearson v. Callahan, 555 U.S. 223 (2009) ("[T]he Saucier procedure should not be regarded as an inflexible requirement[.]")).

Gates alleges that the police defendants fabricated Gates' confession to Smith and Smith's subsequent photo identification of Gates, and they violated their Brady obligation.  If any defendant fabricated Smith's identification or Gates' confession, the defendant would have violated clearly established constitutional rights.  Miller v. Pate, 386 U.S. 1, 7 (1967) ("More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence." (citing Mooney v. Holohan, 294 U.S. 103 (1935))).  Moreover, failing to turn over material exculpatory evidence about Smith would have violated clearly established constitutional rights.  Brady, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably

competent public official should know the law governing his conduct." Crawford-El v. Britton, 523 U.S. 574, 591 (1998).

As is discussed above, there remain genuine issues of material fact regarding whether the police defendants fabricated evidence.  As such, "[q]ualified immunity cannot be granted on summary judgment." Arrington, 473 F.3d at 339.  "[T]he actions taken by [the police defendants] could persuade a reasonable jury that [the police defendants] committed constitutional violations sufficiently significant to overcome the qualified immunity bar set forth in Saucier v. Katz." Id. at 339 (citing Saucier v. Katz, 533 U.S. 194 (2001)); see also Fenwick v. United States, 926 F. Supp. 2d 201, 225 (D.D.C. 2013) (applying the principle in Johnson v. District of Columbia, 528 F.3d 969, 977-78 (D.C. Cir. 2008), that summary judgment on qualified immunity is "premature" where the testimony is "conflicted, creating genuine issue of material fact"); Halcomb v. Wash. Metro. Area Transit Auth., 526 F. Supp. 2d 20, 22 (D.D.C. 2007) ("Pre-trial resolution of the [qualified-immunity] defense . . . may be thwarted by a factual dispute." (quoting Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir. 1990)).

B.   Laches

The defendants assert that because Gates waited nearly 30 years after his trial to bring claims that do not depend upon the newly exonerating DNA evidence, the doctrine of laches bars

Gates' claims.  "The doctrine [of laches] is equitable in nature, and its application 'turns on whether the party seeking relief delayed inexcusably or unreasonably in filing suit,' not simply whether the party delayed."  Menominee Indian Tribe of Wis. v. United States, 614 F.3d 519, 531–32 (D.C. Cir. 2010) (quoting Pro-Football, Inc. v. Harjo, 415 F.3d 44, 49 (D.C. Cir. 2005) (per curiam)).  "'[L]aches is not, like [the statute of] limitation, a mere matter of time,' but 'attaches only to parties who have unjustifiably delayed in bringing suit.'"  Id. at 531 (quoting Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946); Pro-Football, Inc., 415 F.3d at 49).  Laches "applies where there is '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'"  Pro Football, Inc. v. Harjo, 565 F.3d 880, 882 (D.C. Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121–22 (2002)).

Although Gates requests "any and all other relief to which he may be entitled[,]" in addition to damages, Complaint at 38, laches will not bar Gates claims.  Gates advances claims at law.  "[T]he D.C. Circuit explained that laches is 'peculiarly a creature of equity,' applicable only to cases that are 'purely equitable in character.'"  Naccache v. Taylor, 72 A.3d 149, 155 (D.C. 2013) (quoting Saffron v. Dep't of the Navy, 561 F.2d 938, 941 (D.C. Cir. 1977)); see also Farouki v. Petra Int'l Banking

<u>Corp.</u>, 811 F. Supp. 2d 388, 405 & n.3 (D.D.C. 2011) <u>vacated on other grounds</u>, 705 F.3d 515 (D.C. Cir. 2013) ("It is well established under District of Columbia law that laches is a defense to an action in equity." (citing <u>N.A.A.C.P. v. N.A.A.C.P. Legal Def. & Educ. Fund, Inc.</u>, 753 F.2d 131, 137-38 (D.C. Cir. 1985); <u>Powell v. Zuckert</u>, 366 F.2d 634, 636 (D.C. Cir. 1966)).  When the "right [the plaintiff] purportedly would vindicate is single and indivisible . . . and remediation does not lie exclusively within the domain of equity, the availability of legal relief to enforce the underlying right summons the statute of limitations into play as to the whole." <u>Saffron</u>, 561 F.2d at 944; <u>see also</u> <u>Nilsen v. Moss Point</u>, 674 F.2d 379, 388 (5th Cir. 1982) ("[A]lthough the equitable part of a mixed [section 1983] claim can be barred by laches, the legal part will be barred only by the statute of limitations[.]"), <u>vacated on other grounds</u>, 701 F.2d 556 (5th Cir. 1983) (en banc).

Finally, laches cannot bar Gates' claims because his claims have a congressionally mandated statute of limitations.  When "a congressionally mandated statute of limitations governs [a] case, the defense of laches is not available." <u>Potts v. Howard Univ. Hosp.</u>, 623 F. Supp. 2d 68, 73 n.3 (D.D.C. 2009) (citing <u>Combs v. W. Coal Corp.</u>, 611 F. Supp. 917, 920 (D.D.C. 1985)). "The prevailing rule, then, is that when a plaintiff brings a

federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely." <u>Ivani Contracting Corp. v. City of N.Y.</u>, 103 F.3d 257, 260 (2d Cir. 1997); <u>see also</u> <u>Miller v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 586 (9th Cir. 1993) ("[T]he doctrine of laches is inapplicable when Congress has provided a statute of limitations to govern the action."); <u>Swift v. City of Detroit</u>, No. 10-12911, 2012 WL 32683, at *6 (E.D. Mich. Jan. 6, 2012) (rejecting laches defense in a section 1983 case arising from wrongful conviction).  Here, the statute of limitations is three years from "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." <u>Earle v. D.C.</u>, 707 F.3d 299, 305 (D.C. Cir. 2012) (citations omitted). Because Gates' claim for damages did not become cognizable until the court vacated his conviction, <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994), Gates had three years from December 18, 2009 to file.  Gates' Mot., Ex. 26, Order.  Gates filed his complaint in December 2010.  Notice of Removal, Ex. 1.

IV.  DEFENDANTS' MOTION TO STRIKE

The defendants move to strike a supplemental declaration filed by Hamilton Fox, Gates' trial attorney.  The defendants assert that the facts alleged in the supplemental declaration are not made on personal knowledge or ones that would be

admissible in evidence, and that Fox is not competent to testify on the matters stated in the supplemental declaration. See Fed. R. Civ. P. 56(c)(4) ("A[] . . . declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").

The question of whether to strike a pleading "is largely a matter for the trial court's discretion[.]" Ciralsky v. CIA, 355 F.3d 661, 669 (D.C. Cir. 2004). "[M]otions to strike are generally strongly disfavored . . . but may be granted in order to remove 'immaterial, impertinent, or scandalous' material from the record." Wasserman v. Rodacker, Civil Action No. 06-1005 (RWR), 2007 WL 274748, at *2 (D.D.C. Jan. 29, 2007) (internal citations omitted); see also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty, Inc., 647 F.2d 200, 201 (D.C. Cir. 1981); LaRouche v. Dep't of the Treasury, Civil Action No. 91-1655 (RCL), 2000 WL 805214, at *13 (D.D.C. Mar. 31, 2000) ("[A] motion to strike is considered an exceptional remedy and is generally disfavored[.]" (citations omitted)). The moving party carries a "formidable burden." Judicial Watch, Inc. v. Dep't of Commerce, 224 F.R.D. 261, 264 (D.D.C. 2004). "In

resolving motions to strike, . . . the court [should] use[] a scalpel, not a butcher knife." <u>United States v. Science Applications Int'l Corp.</u>, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (internal quotation marks and citations omitted).

Using a scalpel, the court will deny as moot the defendants' motion to strike Fox's supplemental declaration, as to paragraphs one, two, five, and six. In paragraphs one and two, Fox discusses who he is, what his role was in this case, and what he reviewed to prepare his declaration. Gates' Opp'n, Ex. 35, Fox Supplemental Decl. ("Fox Supp. Decl.") ¶¶ 1, 2. Paragraph five summarizes what Fox "would have . . . sought to establish and argue to the jury" regarding Smith's incredibility. <u>Id.</u> ¶ 5. Then, paragraph six discusses why Fox believes that the "exculpatory evidence [about Smith] would have been highly material." <u>Id.</u> ¶ 6. Gates is able to overcome the defendants' partial motion for summary judgment without considering these paragraphs of Fox's supplemental declaration.

The motion to strike paragraphs three and four of Fox's supplemental declaration will be denied on the merits to the extent that they discuss personal knowledge of what Fox did and did not know at the time of Gates' trial. <u>See</u> Fed. R. Civ. Pro. 56(c)(4) (prohibiting declarations that are not made on personal knowledge). In paragraph three, Fox discusses facts that he learned at some point after his representation of Gates. Fox

Supp. Decl. ¶ 3 (listing "material facts that were withheld
. . . during [his] representation of Mr. Gates").  Fox recounts
when he learned about information relating to Smith's criminal
history in paragraph four.  Id. ¶ 4.  However, Fox's legal
conclusions regarding what is material will be disregarded
because legal determinations are for the court, not a witness,
to make.  See, e.g., id. ¶ 3 ("I have learned the following
*material* facts . . . .") (emphasis added).

Fox's statements are based on personal knowledge because
they discuss what Fox knew at the time of Gates' trial.  For
instance, according to Fox, he did not know the events and
details leading up to Smith's participation in Gates'
investigation and prosecution or the details of the agreement
between Smith and the government in exchange for Smith's
testimony against Gates.  Id. ¶¶ 3, 4.  Although Fox does not
have personal knowledge about whether specific events happened
as stated in his declaration (like the precise court dates
associated with Smith's larceny charge or charges), Fox can
adequately testify that he did not have this knowledge at the
time of Gates' trial.  See, e.g., United States v. Munoz-Franco,
487 F.3d 25, 36-37 (1st Cir. 2007) (finding that a witness who
testifies that he is "not aware of significant information"
testifies from personal knowledge).  Fox's declaration is not
taken to mean that events did or did not happen; rather, it

asserts that Fox did not have information (regardless of whether the events happened) at the time of Gates' trial.  Therefore, the motion will be denied.

V.   GATES' MOTION FOR SURREPLY

Gates asserts that a surreply is warranted because the defendants raise new factual arguments in their reply to Gates' opposition to the defendants' motion for partial summary judgment.  Gates' Mem. in Support of his Mot. for Leave to File Sur-reply ("Gates' Mot. for Sur-reply") at 1.  In particular, Gates says that the defendants now argue that "prosecutor Brooks Harrington stated in an e-mail that Donald Gates was not a suspect prior to Gerald Smith's meetings with the Defendant officers[,]" id., and that "Smith was not aware of his arrest for larceny[.]"  Id. at 2.

"The district court routinely grants such [surreply] motions when a party is 'unable to contest matters presented to the court for the first time' in the last scheduled pleading."  Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)).  Nevertheless, "surreplies are generally disfavored, and the determination of whether to grant or deny leave is entrusted to the sound discretion of the district court."  Crummey v. Soc. Sec. Admin., 794 F. Supp. 2d 46, 62 (D.D.C. 2011), aff'd, No. 11-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012) and motion for

relief from judgment denied, 857 F. Supp. 2d 117 (D.D.C. 2012)

(citing Kifafi v. Hilton Hotels Ret. Plan, 736 F. Supp. 2d 64,

69 (D.D.C. 2010); Akers v. Beal Bank, 760 F. Supp. 2d 1, 2

(D.D.C. 2011)).

> In exercising its discretion, the court should
> consider whether the movant's reply in fact raises
> arguments or issues for the first time, whether the
> nonmovant's proposed surreply would be helpful to the
> resolution of the pending motion, and whether the
> movant would be unduly prejudiced were leave to be
> granted.

Banner Health v. Sebelius, 905 F. Supp. 2d 174, 187 (D.D.C.

2012) (citing Glass v. LaHood, 786 F. Supp. 2d 189, 231 (D.D.C.

2011)).

It is immaterial that the defendants raised new factual

information because the defendants invite the court to ignore

the information.  The defendants discuss an e-mail from

John Harrington, who was the Assistant U.S. Attorney in Gates'

trial, for the first time in their reply.  District's Reply at

6.  This e-mail stated that Smith gave the detectives

information about Gates "before Gates was on anybody's radar

screen."  Id. (quoting District's Reply, Ex. 26, E-mail from

Harrington).  However, the defendants invite the court to assume

that Gates was a known suspect before Smith gave the defendants

Gates' name.  Gates' Mot. for Sur-reply ¶ 2 (citing District's

Mot. at 36; District's Reply at 7).

In addition, the government has not raised a new argument regarding the date of Smith's arraignment and arrest because the government had included this information previously.  Gates asserts that the defendants' factual argument that Smith was arraigned and arrested on July 2, 1981, is new.  Gates' Mot. for Sur-reply at 2 (citing District's Reply at 15).  This is not a new fact or argument because the government had already filed an exhibit stating that Smith "was arrested and arraigned on July 2, 1982."  District's Mot., Ex. 24, Beard Decl. ¶ 3. "Where the movant's reply does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate."  Crummey, 794 F. Supp. 2d at 63.  Moreover, Gates already discussed this issue in his opposition.  Gates' Opp'n at 8-9; Gates' Statement of Additional Disputed Facts Pursuant to Local Rule 7(h)(1) ¶¶ 29-31.

Therefore, Gates' motion for leave to file surreply will be denied.

<u>CONCLUSION AND ORDER</u>

Accordingly, it is hereby

ORDERED that the plaintiff's motion [81] for partial summary judgment be, and hereby is, DENIED as to Count One.  It is further

ORDERED that the police defendants' motion [83] for partial summary judgment be, and hereby is, DENIED as to Counts Two through Four.  It is further

ORDERED that summary judgment be, and hereby is, ENTERED for the District as to Count Five.  It is further

ORDERED that the defendants' motion [92] to strike be, and hereby is, DENIED.  It is further

ORDERED that the plaintiff's motion [93] for leave to file a surreply be, and hereby is, DENIED.

SIGNED this 29th day of August, 2014.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge